Ramachandra RAO, M.D.,
Plaintiff-Respondent-Cross-Appellant,

v.

WMA SECURITIES, INC.,
Defendant-Appellant-Cross-Respondent-
Petitioner,

WORLD GROUP SECURITIES, INC., IDEX Investor
Services, Inc., State Street Bank & Trust
Company and David Novak, Defendants.

Supreme Court

*No. 2006AP813. Oral argument March 4, 2008.
—Decided June 27, 2008.*

2008 WI 73

(Also reported in 752 N.W.2d 220.)

For the defendant-appellant-cross-respondent-petitioner there were briefs by *Sean Lanphier* and *Mallery & Zimmerman, S.C.,* Milwaukee, and oral argument by *Sean Lanphier.*

For the plaintiff-respondent-cross-appellant there was a brief by *Sara L. Gehrig* and *Nowlan & Mouat LLP,* Janesville, and oral argument by *Sara L. Gehrig.*

¶ 1. SHIRLEY S. ABRAHAMSON, C.J. The defendant, WMA Securities, Inc., seeks review of an unpublished court of appeals decision affirming in part and reversing in part a judgment and an order of the Circuit Court for Rock County, James Welker, Judge.[1] After the defendant continuously failed to comply with the circuit court's discovery orders, the circuit court issued an order striking the defendant's pleadings and awarding judgment by default to the plaintiff, Ramachandra Rao, M.D., against the defendant.

---

[1] *Rao v. WMA Securities, Inc.,* No. 2006AP813, unpublished slip op. (Wis. Ct. App. Mar. 29, 2007).

¶ 2. The circuit court ordered a hearing on damages, denying the defendant's request for a jury trial on this issue. The court of appeals affirmed the circuit court's ruling denying a jury trial.[2]

¶ 3. The circuit court denied the plaintiff's request for punitive damages under Wis. Stat. § 895.043 (2005–06).[3] The court of appeals reversed the circuit court's denial of punitive damages, remanding the issue to the circuit court to exercise its discretion in determining the nature of the hearing on punitive damages and to determine whether punitive damages are warranted.[4]

¶ 4. Two issues are presented on review of the decision of the court of appeals:[5]

---

[2] The court of appeals stated: "Because [the defendant] has not cited supporting authority for its proposition that a party is entitled to a jury trial following a default judgment, we decline to consider its argument further." *Rao v. WMA Securities, Inc.*, No. 2006AP813, unpublished slip op., ¶ 23 (Wis. Ct. App. Mar. 29, 2007).

[3] All subsequent references to the Wisconsin Statutes are to the 2005–06 version unless otherwise indicated.

At the time this action was brought the punitive damages statute was numbered Wis. Stat. § 895.85 (2003–04).

[4] *Rao v. WMA Securities, Inc.*, No. 2006AP813, unpublished slip op., ¶ 42 (Wis. Ct. App. Mar. 29, 2007). The court of appeals further explained its remand at ¶ 42 as follows:

> For example, the court may hold an evidentiary hearing, consider Rao's offer of proof to determine if an evidentiary hearing is warranted, or allow Rao an opportunity to submit additional proof to support his case for punitive damages before determining whether to hold a full evidentiary hearing.

[5] The court of appeals was presented with both an appeal by the defendant and a cross-appeal by the plaintiff and decided a number of issues that neither party has briefed or has sought to

627

I. Did the circuit court violate the defendant's right of trial by jury under Article I, Section 5 of the Wisconsin Constitution when it denied the defendant's motion for a jury trial on the issue of damages after it ordered a judgment by default against the defendant?

II. Did the circuit court err in denying the plaintiff's punitive damages claim?

¶ 5. We conclude that the circuit court did not violate the defendant's right of trial by jury under Article I, Section 5 of the Wisconsin Constitution when it denied the defendant's motion for a jury trial on the issue of damages. The defendant waived its right of trial by jury in the manner set forth in Wis. Stat. §§ (Rule) 804.12(2) and 806.02. We further conclude that the circuit court erred in denying the plaintiff's claim for punitive damages solely on the basis of allegations in the complaint and in denying the plaintiff an opportunity to prove additional facts in support of the punitive damages claim.

¶ 6. Accordingly, we affirm the decision of the court of appeals. We affirm, as did the court of appeals, the circuit court's denial of the defendant's request for

---

have reviewed here. Accordingly, the court does not address these issues and limits its review to the two issues the parties present.

The court of appeals affirmed the circuit court's order striking the defendant's pleading and awarding default judgment to the plaintiff; the circuit court's determination of the amount of the plaintiff's damages; and the circuit court's ruling denying the plaintiff's request for multiple damages under Wis. Stat. § 895.80. The court of appeals reversed the circuit court's ruling denying the defendant's request to present evidence of the plaintiff's failure to mitigate damages and reversed the circuit court's ruling not to offset the damages award by the amount the plaintiff recovered from settling defendants.

a jury trial on the issue of damages. We reverse, as did the court of appeals, the circuit court's ruling denying punitive damages, and remand the issue of punitive damages to the circuit court to exercise its discretion in determining the nature of the hearing on punitive damages and to determine whether punitive damages are warranted. We affirm the decision of the court of appeals remanding the cause to the circuit court.

¶ 7. We briefly summarize the facts giving rise to the instant case and present additional facts relating to each issue when we address that issue. The facts are more fully stated in the decision of the court of appeals.

¶ 8. The plaintiff brought an action against the defendant, an employee of the defendant, and three additional co-defendants alleging that the employee unlawfully converted hundreds of thousands of dollars from an investment account that the plaintiff maintained with the defendant. The plaintiff asserted that the defendant terminated the employee's employment but took no action to inform the plaintiff that the employment had been terminated or that the termination was for forgery and theft. The circuit court entered judgment by default against the employee. Each of the remaining co-defendants was eventually dismissed from the action.

¶ 9. The plaintiff alleged that the defendant is liable to the plaintiff for (1) vicarious liability for the employee's unlawful acts of conversion, (2) intentional misrepresentation, (3) strict responsibility misrepresentation, (4) negligent misrepresentation, (5) breach of fiduciary duty, (6) negligence, (7) breach of the implied duty of good faith in performance of a contract, and (8) breach of contract. The plaintiff demanded damages from the defendant, including compensatory damages and punitive damages.

¶ 10. After hearing the parties on the question whether the defendant had disobeyed discovery orders, the circuit court agreed with the plaintiff's characterization of the defendant's conduct during discovery, and, as a sanction for the defendant's violating discovery orders, the circuit court ordered the defendant's pleadings struck and granted the plaintiff's motion for judgment by default pursuant to Wis. Stat. § (Rule) 804.12(2)(a) authorizing a circuit court to sanction a party for failure to comply with discovery orders.

¶ 11. No judgment by default was rendered or entered because damages had not been determined. Thus the circuit court's order also provided that the defendant would be entitled to participate in an evidentiary hearing to determine the amount of damages. Approximately two weeks after holding the evidentiary hearing, the circuit court rendered a default judgment against the defendant for the plaintiff's damages as determined by the circuit court.[6] The judgment was then entered three days after it was rendered.[7]

I

¶ 12. We examine first the defendant's argument that the circuit court violated the defendant's right of trial by jury under Article I, Section 5 of the Wisconsin Constitution when it denied the defendant's motion for a jury trial on the issue of damages.

¶ 13. The defendant's motion for a jury trial on the issue of damages came after the circuit court

---

[6] "A judgment is rendered by the court when it is signed by the judge or by the clerk at the judge's written discretion." 3A Jay E. Grenig, *Wisconsin Practice Series: Civil Procedure* § 602.4, at 172 (3d ed. 2003).

[7] "A judgment is entered when it is filed in the office of the clerk of court." 3A Grenig, *supra* note 6, § 602.4, at 172.

granted the plaintiff's motion for judgment by default against the defendant as a sanction, pursuant to Wis. Stat. § (Rule) 804.12(2)(a), for failing to comply with discovery orders and ordered an evidentiary hearing on damages. The defendant had neither demanded a jury trial in the circuit court nor paid the jury fee in a timely fashion before the pleadings were struck. A co-defendant, however, did demand a jury trial and did pay the jury fee timely.[8] The co-defendant was later dismissed from the case. Because neither party in the instant case raised or briefed the issue, the question whether a co-defendant's timely demand for a jury trial and timely payment of the jury fee suffices to enable the defendant to claim a constitutional right of trial by jury is not before the court. We assume (without deciding) that for purposes of the instant review the co-defendant's demand for trial by jury and payment of the jury fee can be attributed to the defendant.

¶ 14. Article I, Section 5 of the Wisconsin Constitution provides in full as follows:

> The right of trial by jury shall remain inviolate, and shall extend to all cases at law without regard to the amount in controversy; but a jury trial may be waived by the parties in all cases in the manner prescribed by law. Provided, however, that the legislature may, from time to time, by statute provide that a valid verdict, in civil cases, may be based on the votes of a specified number of the jury, not less than five-sixths thereof.

---

[8] The circuit court ordered that "[o]n or before April 10, 2005, the party demanding a trial by jury shall pay to the office of the clerk . . . the jury fee required by statute" and that "[i]n the event such fee is not paid by that date, the right of trial by jury will be deemed waived."

██

¶ 15. Interpretation of the Wisconsin Constitution presents a question of law that this court determines independently of the circuit court and court of appeals but benefiting from their analyses.[9]

¶ 16. The defendant argues that if its constitutional right of trial by jury is to remain inviolate, it cannot be denied a jury trial on the issue of damages in the present case.

██

¶ 17. We agree with the defendant that the Article I, Section 5 right of trial by jury extends to the issue of damages. In *Jennings v. Safeguard Ins. Co.,* 13 Wis. 2d 427, 109 N.W.2d 90 (1961), this court held that the right of trial by jury under Article I, Section 5 extends to "all issues of fact, including that of damages."[10] Nevertheless, a party may waive a trial by jury on the issue of damages "in the manner prescribed by law."

¶ 18. The question presented is whether the defendant waived its right of trial by jury in the manner prescribed by law. The court has addressed waiver in previous cases. The court has declared that a defendant "has no vested right under art. I, sec. 5 [of the Wisconsin Constitution], to the manner or time in which [the right of trial by jury] may be exercised or waived, since these are merely procedural matters to be determined by law."[11]

---

[9] *Ferdon ex rel. Petrucelli v. Wis. Patients Comp. Fund,* 2005 WI 125, ¶ 58, 284 Wis. 2d 573, 701 N.W.2d 440.

[10] *Jennings v. Safeguard Ins. Co.,* 13 Wis. 2d 427, 431, 109 N.W.2d 90 (1961) (citing *Borowicz v. Hamann,* 193 Wis. 324, 214 N.W. 431 (1927)).

[11] *Phelps v. Physicians Ins. Co. of Wis., Inc.,* 2005 WI 85, ¶ 32, 282 Wis. 2d 69, 698 N.W.2d 643 (quoting *State ex rel.*

¶ 19. The manner in which the Article I, Section 5 right of trial by jury may be waived is governed principally by Wis. Stat. § (Rule) 805.01(3).[12] Section (Rule) 805.01(3) sets forth two ways in which the right of trial by jury may be waived. First, a party's failure to demand a jury trial timely in accordance with § (Rule) 805.01(2) constitutes a waiver of the jury trial right. Second, the parties or their attorneys of record may waive the right by written stipulation filed with the court or by oral stipulation made in open court and entered in the record.

¶ 20. Wisconsin Stat. § (Rule) 805.01(3) is not the exclusive provision governing the manner in which the state constitutional right of trial by jury may be waived. Under § 814.61(4), for example, a party may waive the jury trial right by failing to pay the jury fee timely.

*Prentice v. County Court,* 70 Wis. 2d 230, 240, 234 N.W.2d 283 (1975)) (quotation marks omitted).

[12] Wisconsin Stat. § (Rule) § 805.01 provides in full as follows:

**(1) Right preserved.** The right of trial by jury as declared in article I, section 5, of the constitution or as given by a statute and the right of trial by the court shall be preserved to the parties inviolate.

**(2) Demand.** Any party entitled to a trial by jury or by the court may demand a trial in the mode to which entitled at or before the scheduling conference or pretrial conference, whichever is held first. The demand may be made either in writing or orally on the record.

**(3) Waiver.** The failure of a party to demand in accordance with sub. (2) a trial in the mode to which entitled constitutes a waiver of trial in such mode. The right to trial by jury is also waived if the parties or their attorneys of record, by written stipulation filed with the court or by an oral stipulation made in open court and entered in the record, consent to trial by the court sitting without a jury. A demand for trial by jury made as herein provided may not be withdrawn without the consent of the parties.

Section 814.61(4) states that if the jury fee is not paid timely, "no jury may be called in the action, and the action may be tried to the court without a jury."[13]

¶ 21. Moreover, "Wisconsin Stat. §§ 805.01(3) and 814.61 are "but two examples of how waiver [of the Article I, Section 5 right of trial by jury] may be effectuated."[14]

■

¶ 22. As both Wis. Stat. § (Rule) 805.01(3) and Wis. Stat. § 814.61 make clear, a party's "waiver" of the Article I, Section 5 right of trial by jury need not be a "waiver" in the strictest sense of that word, that is, an "intentional relinquishment of a known right."[15] Instead, a party may "waive" the Article I, Section 5 right of trial by jury by failing to assert the right timely (as when a party fails to demand a jury trial timely in accordance with § (Rule) 805.01) or by violating a law setting conditions on the party's exercise of the jury trial right (as when a party fails to pay the jury fee timely in accordance with Wis. Stat. § 814.61).

¶ 23. Two examples from the case law are instructive: *State ex rel. Prentice v. County Court*, 70 Wis. 2d 230, 240, 234 N.W.2d 283 (1975), and *Phelps v. Physicians Insurance Co. of Wisconsin, Inc.*, 2005 WI 85, 282 Wis. 2d 69, 698 N.W.2d 643.

---

[13] Wisconsin Stat. § 814.61(4) provides in full as follows:

**Jury Fee.** For a jury in all civil actions, except a garnishment action under ch. 812, a nonrefundable fee of $6 per juror demanded to hear the case to be paid by the party demanding a jury within the time permitted to demand a jury trial. If the jury fee is not paid, no jury may be called in the action, and the action may be tried to the court without a jury.

[14] *Phelps*, 282 Wis. 2d 69, ¶ 28.

[15] *State v. Kelty*, 2006 WI 101, ¶ 18 n.11, 294 Wis. 2d 62, 716 N.W.2d 886.

¶ 24. In the *Prentice* case, Prentice waived her right to a jury trial by failing to assert the right timely. This form of "waiver" is more akin to "forfeiture" than to "waiver" in its strictest sense as an intentional relinquishment of a known right. *See State v. Kelty,* 2006 WI 101, ¶ 18 n.11, 294 Wis. 2d 62, 716 N.W.2d 886 (defining "forfeiture" as "the failure to make the timely assertion of a right" and as occurring "by operation of law without regard to the defendant's state of mind").

¶ 25. Prentice was one day late in demanding a jury trial and paying her jury fee. The applicable statute required Prentice to demand a jury trial and to pay the jury fee within 20 days of joining issue.[16] Prentice took 21 days. The circuit court consequently denied Prentice's demand for a trial by jury.

¶ 26. This court rejected Prentice's argument that the applicable statute operated in violation of her rights under Article I, Section 5. The court held that Prentice had waived her right of trial by jury because the applicable statute "is a law which reasonably prescribes that failure of a party to act within twenty days constitutes a waiver of jury trial in cases to which [the statute] applies."[17]

---

[16] The applicable statute, Wis. Stat. § 299.21(3) (1971), provided as follows:

> Trial by jury. (a) Any party may, upon payment of the fees specified in par. (b), file a written demand for trial by jury. If no party demands a trial by jury, the right to trial by jury is waived forever. In eviction actions, such demand shall be filed at or before the time of joinder of issue; in all other actions within 20 days thereafter.
>
> (b) The fee for a jury is $24, plus an additional amount as suit tax which will result in a suit tax payment of the amount which would have been payable had the action been commenced in circuit court and additional clerk's fees of $6.

*Prentice,* 70 Wis. 2d at 239.

[17] *Id.*

¶ 27. Furthermore, we recognized in *Prentice* that the defendant's waiver of the jury trial right puts the defendant's demand for a jury trial at the discretion of the circuit court. We stated that once a defendant fails to meet the requirements of the statute limiting the time in which to demand a jury trial and to pay the jury fee, the defendant "loses her right and the matter of a jury trial becomes discretionary with the trial court."[18] *Prentice* shows that this court has sustained as constitutional a circuit court's discretionary decision to deny a defendant's right of jury trial based on the defendant's waiver of the right.

¶ 28. In *Phelps,* the Physicians Insurance Company of Wisconsin (PIC) asserted the right of trial by jury timely but then waived the right by failing to comply with a law setting conditions on PIC's exercise of the right that it had timely asserted. PIC timely asserted its right to a jury trial but then failed to pay the jury fee timely in accordance with the circuit court's scheduling order and local rules.[19] Relying upon Wis. Stat. § 814.61, the court concluded that PIC's failure to pay the jury fee timely constituted a waiver of the jury trial right that PIC had timely asserted.[20]

¶ 29. Prentice's and PIC's actions plainly did not evince the intent to relinquish a right known to them. Prentice "waived" her right to a jury trial by failing to assert the right timely. PIC asserted the jury trial right timely but then waived the right by failing to comply with a statute setting conditions on PIC's exercise of the right.

---

[18] *Id.* at 240.

[19] *Phelps,* 282 Wis. 2d 69, ¶ 15.

[20] *Id.,* ¶¶ 30–32.

¶ 30. Thus the question presented in the instant case is whether by failing to comply with the circuit court's discovery orders and by incurring a judgment by default as a sanction, the defendant has waived its state constitutional right of trial by jury in the manner prescribed by law. More specifically, the question presented is whether Wis. Stat. § (Rule) 804.12(2), governing sanctions for discovery violations, and Wis. Stat. § (Rule) 806.02, governing default judgments, are laws prescribing the manner in which a party's right of trial by jury is waived.

¶ 31. Section (Rule) 804.12(2)(a) authorizes a circuit court to strike out pleadings or parts thereof and render a judgment by default against a disobedient party who has failed to comply with a circuit court's discovery orders.[21] It provides in relevant part as follows:

(2) **Failure to comply with order.**

(a) If a party . . . fails to obey an order to provide or permit discovery . . . the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

. . . .

3. *An order striking out pleadings* or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof,

---

[21] *See also* Wis. Stat. § (Rule) 805.03, providing in relevant part as follows:

For failure of any claimant to prosecute or for failure of any party to comply with the statutes governing procedure in civil actions or to obey any order of court, the court in which the action is pending may make such orders in regard to the failure as are just, including but not limited to orders authorized under s. 804.12(2)(a). . . .

637

*or rendering a judgment by default* against the disobedient party . . . (emphasis added).

¶ 32. Wisconsin Stat. § (Rule) 806.02 governs default judgments. Wisconsin Stat. § (Rule) 806.02 provides in relevant part as follows:

**Default Judgment** (1) A default judgment may be rendered as provided in subs. (1) to (4) if no issue of law or fact has been joined and if the time for joining issue has expired. Any defendant appearing in an action shall be entitled to notice of motion for judgment.

(2) . . . the plaintiff may move for judgment according to the demand of the complaint. . . . If proof of any fact is necessary for the court to give judgment, the court shall receive the proof.

 . . . .

(5) A default judgment may be rendered against any defendant who has appeared in the action but who fails to appear at trial. If proof of any fact is necessary for the court to render judgment, the court shall receive the proof.

¶ 33. The interpretation of Wis. Stat. §§ (Rules) 804.12(2) and 806.02 is a question of law that we determine independently of the circuit court and court of appeals but benefiting from their analyses.[22]

¶ 34. Wisconsin Stat. §§ (Rules) 804.12(2)(a) and 806.02 are rules of pleading, practice, and procedure that were adopted by this court pursuant to Wis. Stat. § 751.12. Wisconsin Stat. § 751.12 provides in relevant part as follows:

---

[22] *Waters ex rel. Skow v. Pertzborn,* 2001 WI 62, ¶ 16, 243 Wis. 2d 703, 627 N.W.2d 497.

**Rules of pleading and practice**. (1) The state supreme court shall, by rules promulgated by it from time to time, regulate pleading, practice, and procedure in judicial proceedings in all courts, for the purposes of simplifying the same and of promoting the speedy determination of litigation upon its merits. The rules shall not abridge, enlarge, or modify the substantive rights of any litigant. . . .

(2) All statutes relating to pleading, practice, and procedure may be modified or suspended by rules promulgated under this section. . . .

. . . .

(4) This section shall not abridge the right of the legislature to enact, modify, or repeal statutes or rules relating to pleading, practice, or procedure.

(5) The judicial council shall act in an advisory capacity to assist the court in performing its duties under this section.

██

¶ 35. A rule adopted by this court in accordance with Wis. Stat. § 751.12 is numbered as a statute, is printed in the Wisconsin Statutes, may be amended by both the court and the legislature,[23] has been described by this court as "a statute promulgated under this court's rule-making authority," and has the force of law.[24] Thus if the defendant relinquished its right of trial by jury in the manner prescribed by Wis. Stat. §§ (Rules) 804.12(2)(a) and 806.02, rules of practice and

---

[23] Both Wis. Stat. §§ (Rules) 804.12 and 806.06 have been amended by statute.

[24] *Trinity Petroleum, Inc. v. Scott Oil Co., Inc.,* 2007 WI 88, ¶¶ 32, 39, 302 Wis. 2d 299, 735 N.W.2d 1; *Waters,* 243 Wis. 2d 703, ¶ 16.

procedure, then the defendant has waived its state constitutional right to a jury trial on the issue of damages.[25]

¶ 36. Wisconsin Stat. § (Rule) 804.12(2), governing sanctions for violation of discovery orders, allows a circuit court to render a judgment by default against a disobedient defendant. It is well established that "judgment by default" (the term used in Wis. Stat. § 804.12(2)(a)3.) is identical to "default judgment" (the term used in Wis. Stat. § 806.02). For example, in Split Rock Hardwoods v. *Lumber Liquidators, Inc.,* 2002 WI 66, 42 n.15, 253 Wis. 2d 238, 646 N.W.2d 19, Justice Prosser explained on behalf of the court that [a] court may enter *default judgment* under Wis. Stat. 804.12(2)(a) against a party for failure to comply with a discovery order (emphasis added) (citing *Midwest Developers v. Goma Corp.,* 121 Wis. 2d 632, 650, 360 N.W.2d 554 (Ct. App. 1984)). The circuit court ordered a default judgment to be rendered against the defendant in the present case for failure to comply with a discovery order, and we look to the law governing default judgments to determine whether the defendant has a right of trial by jury on the issue of damages.[26]

---

[25] This court has previously recognized that a court-promulgated rule of pleading, practice, or procedure may prescribe the manner in which the state constitutional right to trial by jury is waived. *See Phelps,* 282 Wis. 2d 69, ¶ 28 (stating that Wis. Stat. § (Rule) 805.03 provides an example of how waiver of the jury trial right may be effectuated).

[26] The Wisconsin courts consistently apply Wis. Stat. (Rule) 806.02 in cases where a default judgment is rendered under Wis. Stat. 804.12(2)(a). See our discussion, 41–42, *infra,* of *Brandon Apparel Group, Inc. v. Pearson Props., Ltd.,* 2001 WI App 205, 247 Wis. 2d 521, 634 N.W.2d 544; *Smith v. Golde,* 224 Wis. 2d 518, 528, 530, 592 N.W.2d 287 (Wis. Ct. App. 1999);

640

¶ 37. The defendant on review accepts that the default judgment was properly rendered in the present case. According to Wis. Stat. § (Rule) 806.02, a default judgment may be rendered if no issue of law or fact has been joined. In the present case no issue of law or fact has been joined because the circuit court struck the defendant's pleadings; the circuit court thus rendered a judgment by default that satisfies Wis. Stat. § (Rule) 806.02 governing default judgment.[27]

¶ 38. According to Wis. Stat. § (Rule) 806.02, if proof of any fact, including damages, is necessary for the circuit court to render judgment by default, the circuit court shall receive the proof. A party who

---

*Kerans v. Manion Outdoors Co.*, 167 Wis. 2d 122, 130–31, 482 N.W.2d 110 (Ct. App. 1992); and *Midwest Developers v. Goma Corp.*, 121 Wis. 2d 632, 651, 360 N.W.2d 554 (Ct. App. 1984).

[27] The case law makes clear that Wis. Stat. § (Rule) 806.02 governs cases in which the defendant answers but the circuit court strikes the defendant's answer. For example, we stated in *Split Rock Hardwoods v. Lumber Liquidators, Inc.*, 2002 WI 66, 253 Wis. 2d 238, 646 N.W.2d 19, that a party is subject to default judgment under Wis. Stat. § (Rule) 806.02 once the circuit court has struck the party's answer. Writing for the *Split Rock* majority, Justice Prosser explained that "[a] successful motion to strike an answer will normally lead to a default judgment." *Split Rock*, 253 Wis. 2d 238, ¶ 38.

The Wisconsin courts routinely apply Wis. Stat. § (Rule) 806.02 in cases in which the defendant answers but the circuit court strikes the defendant's answer. *See, e.g., Leonard v. Cattahach,* 214 Wis. 2d 236, 571 N.W.2d 444 (Ct. App. 1997) (affirming the circuit court's decision striking the defendant's untimely answer and entering default judgment against the defendant); *Gerth v. American Star Insurance Co.*, 166 Wis. 2d 1000, 480 N.W.2d 836 (Ct. App. 1992) (same); *Martin v. Griffin*, 117 Wis. 2d 438, 344 N.W.2d 206 (Ct. App. 1984) (same).

defaults admits liability but not the amount of damages.[28] Wisconsin Stat. § (Rule) 806.02(2) and (5) do not bind the court to a single procedure for deciding factual issues when a default judgment is entered but instead provide only that "[i]f proof of any fact is necessary for the court to give judgment, the court shall receive the proof."[29] The Judicial Council Committee's Note to the 1978 Supreme Court order amending Wis. Stat. § (Rule) 806.02(5) to state in conformity with subsection (2) that the circuit court "shall receive the proof," in place of "shall hear the proof," explains that a circuit court

---

[28] *See* 3A Grenig, *supra* note 6, § 602.3, at 171 ("If the court determines the defendant is in default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.") (citing Charles Alan Wright et al., *Federal Practice and Procedure: Civil 2d* § 2688 (pertaining to Rule 55 of the Federal Rules of Civil Procedure)).

"We look to federal cases [applying Federal Rule 55] because Wis. Stat. § 806.02 is similar in language and effect to Fed. R. Civ. P. 55 governing default judgments." *Apex Electronics Corp. v. Gee,* 217 Wis. 2d 378, 389 n.11, 577 N.W.2d 23 (1998) (citation omitted).

"[T]he failure of an averment to state a valid claim for relief is fatal to a motion for default judgment." *Tridle ex rel. Shannon v. Horn,* 2002 WI App 215, ¶ 11, 257 Wis. 2d 529, 652 N.W.2d 418.

[29] Wisconsin Stat. § (Rule) 806.02(2) provides:

After filing the complaint and proof of service of the summons on one or more of the defendants and an affidavit that the defendant is in default for failure to join issue, the plaintiff may move for judgment according to the demand of the complaint. If the amount of money sought was excluded from the demand for judgment, as required under s. 802.02 (1m), the court shall require the plaintiff to specify the amount of money claimed and provide that information to the court and to the other parties prior to the court rendering judgment. If proof of any fact is necessary for the court to give judgment, the court shall receive the proof.

.

receiving proof of any fact in a default judgment matter has "the option of in-chamber consideration of affidavits presented by attorneys" as well as "the option of hearing proof in open court."[30]

¶ 39. Although Wis. Stat. § (Rule) 806.02, governing default judgments, does not explicitly address the question whether a defendant's default constitutes a waiver of the right of trial by jury on the issue of damages, the clear implication of the rule and the case law applying the rule is that by engaging in conduct that results in a default judgment the defendant has waived its right of trial by jury in the manner prescribed by Wis. Stat. § (Rule) 806.02, a rule of pleading, practice, and procedure. A right of trial by jury on the issue of damages is inconsistent with the proposition that a circuit court has discretion to determine the nature of the hearing for deciding issues of fact and has discretion to determine the nature of the procedure for establishing damages, including the discretion to decide factual issues on the basis of affidavits presented by the attorneys.

¶ 40. In *Apex Electronics Corp. v. Gee,* 217 Wis. 2d 378, 387, 577 N.W.2d 23 (1998), for example, a case in which the circuit court rendered default judgment on a punitive damages claim, this court held that if proof of any fact is necessary for the circuit court to give default judgment under Wis. Stat. § (Rule) 806.02, "[t]he procedure for obtaining the additional proof . . . is within the discretion of the circuit court." In *Hedtcke v. Sentry Ins. Co.,* 109 Wis. 2d 461, 478 n.5, 326 N.W.2d 727 (1982), the court similarly stated that "[u]pon entry of a

---

[30] Order, *In re the Rules of Civil Procedure,* 82 Wis. 2d ix, xvi (1978).

default judgment, the circuit court may hold a hearing or inquiry to determine damages" (citations omitted).

¶ 41. The case law further demonstrates that when default judgment is rendered pursuant to Wis. Stat. § (Rule) 804.12(2)(a), governing sanctions for a violation of a circuit court's discovery order, the procedure for deciding the issue of damages lies within the discretion of the circuit court. The court of appeals has consistently looked to Wis. Stat. § (Rule) 806.02 when determining the proper procedure for determining damages under Wis. Stat. § (Rule) 804.12(2)(a) when a default judgment was rendered.[31]

¶ 42. For example, in *Brandon Apparel Group, Inc. v. Pearson Props., Ltd.*, 2001 WI App 205, 247 Wis. 2d 521, 634 N.W.2d 544, the circuit court ordered judgment by default against a third-party defendant as a sanction for the third-party defendant's failure to appear for a deposition as ordered.[32] After determining that the circuit court had not erroneously exercised its

---

[31] *See, e.g., Smith v. Golde,* 224 Wis. 2d 518, 528, 530, 592 N.W.2d 287 (Wis. Ct. App. 1999) (holding that the circuit court did not erroneously exercise its discretion in ordering default judgment under Wis. Stat. § (Rule) 804.12(2)(a); applying Wis. Stat. § (Rule) 806.02(2) to determine whether the court was required to receive additional evidence to assess damages); *Kerans,* 167 Wis. 2d at 130–31 (holding that the circuit court did not erroneously exercise its discretion in ordering default judgment under Wis. Stat. § (Rule) 804.12(2)(a); applying Wis. Stat. § (Rule) 806.02(5) to determine whether the circuit court erred by not requiring proof of damages before entering the judgment); *Midwest Developers v. Goma Corp.,* 121 Wis. 2d 632, 651, 360 N.W.2d 554 (Ct. App. 1984) (holding that the circuit court did not erroneously exercise its discretion in ordering default judgment under Wis. Stat. § (Rule) 804.12(2); applying Wis. Stat. § (Rule) 806.02(2) to determine whether the court erred in assessing damages without an evidentiary hearing).

[32] *Brandon Apparel,* 247 Wis. 2d 521, ¶ 9.

discretion in ordering default judgment under Wis. Stat. § (Rule) 804.12(2)(a),[33] the court of appeals applied Wis. Stat. § (Rule) 806.02(2) (governing default judgment) to determine whether the circuit court was required to receive additional evidence to assess damages.[34] The *Brandon Apparel* court of appeals further ruled that when receiving proof of any fact prior to rendering judgment by default, the circuit court may receive proof "through an evidentiary hearing or by means of affidavits."[35]

¶ 43. This court has similarly recognized, in a case in which it rendered judgment against a disobedient party as a sanction for misconduct, that the procedure for determining damages lies within the circuit court's discretion. In *Chevron Chemical Co. v. Deloitte & Touche,* 176 Wis. 2d 935, 501 N.W.2d 15 (1993) (*Chevron I*), which was not a default judgment case, this court imposed judgment, "on the authority provided by secs. 805.03 and 804.12, Stats., and the inherent authority courts have to enter judgment as a sanction,"[36] against Deloitte, a disobedient defendant, as a sanction for repeated, flagrant, and intentional misconduct. The *Chevron I* court remanded the cause to the circuit court to determine the amount of damages to be awarded against Deloitte and instructed the circuit court that on remand "the matter of the amount of damages is to be treated as it is in typical default judgment cases."[37]

---

[33] *Id.,* ¶¶ 11, 19.

[34] *Id.,* ¶ 20.

[35] *Id.* (citation omitted).

[36] *Chevron Chemical Co. v. Deloitte & Touche,* 176 Wis. 2d 935, 947, 501 N.W.2d 15 (1993) (*Chevron I*). *See also Chevron Chem. Co. v. Deloitte & Touche LLP,* 207 Wis. 2d 43, 48, 557 N.W.2d 775 (1997) (*Chevron II*).

[37] *Chevron I,* 176 Wis. 2d at 950.

¶ 44. On remand the circuit court determined damages on the basis of the circuit court record, without an evidentiary hearing, even though Deloitte wanted an evidentiary hearing with all the characteristics of a bifurcated trial on damages.[38] In *Chevron Chemical Co. v. Deloitte & Touche LLP,* 207 Wis. 2d 43, 557 N.W.2d 775 (1997) (*Chevron II*), this court explained that in *Chevron I* it had intended to leave "the nature of the hearing on damages to the circuit court's discretion," just as in typical default judgment situations.[39] The *Chevron II* court further held that the circuit court had not erroneously exercised its discretion when it declined to hold an evidentiary hearing and instead determined damages on the basis of the trial record, with additional briefing and oral argument.[40]

■

¶ 45. Wisconsin Stat. §§ (Rules) 804.12(2)(a) and 806.02 and case law interpreting and applying these rules establish the manner by which a party waives its Article I, Section 5 right of trial by jury on the issue of

---

[38] *Chevron II,* 207 Wis. 2d at 46.

Based on Deloitte's request, the circuit court concluded that Deloitte wanted a jury trial on damages. Plaintiff-Respondent-Cross Appellant-Petitioner's Brief Upon Review at 8–9 & n.6, in *Chevron Chem. Co. v. Deloitte & Touche LLP,* 207 Wis. 2d 43, 557 N.W.2d 775 (1997).

[39] *Chevron II,* 207 Wis. 2d at 50.

*Chevron II* made clear that Wis. Stat. § (Rule) 806.02, the law governing default judgment, did not govern that case. *Chevron II,* 207 Wis. 2d at 48. The *Chevron II* court explained that "issues of fact and law were joined [in that case] and the defendant appeared at trial." *Id.* Judgment against the defendant in *Chevron I* had been entered by the *Chevron I* supreme court on appellate review as a sanction. *Id.*

[40] *Chevron II,* 207 Wis. 2d at 44.

damages. Under these court rules, a defendant's failure to comply with the circuit court's discovery orders, resulting in default judgment against the defendant, constitutes a waiver of the defendant's state constitutional right to a jury trial on the issue of damages. Accordingly, we conclude that the circuit court did not violate the defendant's right of trial by jury under Article I, Section 5 of the Wisconsin Constitution when, adhering to Wis. Stat. §§ (Rules) 804.12(2) and 806.02, it denied the defendant's motion for a jury trial on the issue of damages.

¶ 46. Our decision in the present case is buttressed by federal cases addressing the question whether the Seventh Amendment[41] right of trial by jury in civil cases survives a default judgment or sanctions for a party violating a discovery order.

¶ 47. This court, in construing Article I, Section 5 of the Wisconsin Constitution, may look for guidance to federal decisions interpreting the Seventh Amendment.[42] Because the Wisconsin rules governing default

---

[41] The Seventh Amendment to the United States Constitution provides as follows: "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law."

[42] *Markweise v. Peck Foods Corp.*, 205 Wis. 2d 208, 225, 556 N.W.2d 326 (Ct. App. 1996) ("The right to a jury trial in civil cases that is guaranteed by Article I, § 5 of the Wisconsin Constitution is substantially similar to that right guaranteed by the Seventh Amendment to the United States Constitution . . . . The Seventh Amendment jury-trial right does not apply to the states. Nevertheless, we may be guided by the federal cases interpreting that provision.") (citation omitted).

judgments and sanctions for violations of discovery orders mirror the federal rules, federal law is also instructive in interpreting the Wisconsin rules. Rule 55 of the Federal Rules of Civil Procedure is similar to Wis. Stat. § (Rule) 806.02 governing default judgments and may guide our interpretation of the Wisconsin statute.[43] Rule 37(b)(2) of the Federal Rules of Civil Procedure is essentially identical to Wis. Stat. § (Rule) 804.12(2)(a) governing sanctions for violation of discovery orders.[44]

¶ 48. The federal courts agree that a defendant's default extinguishes the Seventh Amendment right to a jury trial on the question of damages.[45] As one federal

---

[43] "We look to federal cases because Wis. Stat. § 806.02 is similar in language and effect to Fed. R. Civ. P. 55 governing default judgments." *Apex Electronics. Corp. v. Gee,* 217 Wis. 2d 378, 389 n.11, 577 N.W.2d 23 (1998) (citation omitted).

*See also Midwest Developers v. Goma Corp.,* 121 Wis. 2d 632, 651–52, 360 N.W.2d 554 (Ct. App. 1984) ("When there are no Wisconsin cases on point, an appellate court can look to federal decisions for aid in determining the intent of a Wisconsin statute if a federal statute exists that is similar in language and operation. Federal Rule of Civil Procedure 55 is similar in language and effect to sec. 806.02, Stats.") (footnote and internal citations omitted).

[44] *Compare* Fed. R. Civ. P. 37(b)(2)(A) ("If a party . . . fails to obey an order to provide or permit discovery . . . the court where the action is pending may issue further just orders. They may include the following: . . . (vi) rendering a default judgment against the disobedient party . . . .") *with* Wis. Stat. § 804.12(2)(a) ("If a party . . . fails to obey an order to provide or permit discovery . . . the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following: . . . 3. An order striking out pleadings or parts thereof . . . or rendering a judgment by default against the disobedient party . . . .").

[45] *See* 10 James Wm. Moore et al., *Moore's Federal Practice* § 55.32[2][e], at 55–50 (3d ed. 2007) ("[T]he defaulting party is

court of appeals explained: "It is ... clear that in a default case neither the plaintiff nor the defendant has a constitutional right to a jury trial on the issue of damages. Assuming that [the party] had the right to a jury trial he waived that right when he purposefully chose not to answer the suit and timely request such a trial."[46] For a recitation of the history (from the first volume of Blackstone's Commentaries in 1765 until 1877) of the assessment of damages without a jury upon a default judgment rendered under court rules, see *Raymond v. Danbury & Norwalk Railroad Co.*, 20 Fed. Cas. 332 (C.C. Conn. 1877) (No. 11,593).[47] Federal law, like Wisconsin law, places the procedure for determining damages in a default judgment case within the discretion of the trial court.[48]

entitled to contest damages and participate in a hearing on damages, if one is held, but has no right to a jury trial, either under the federal rules or under the Constitution. The defaulting party waives normal rights to a jury trial by its default.") (footnote omitted); 10A Charles Alan Wright et al., *Federal Practice and Procedure* § 2688 at 69 (3d ed. 1998) (although "the court may order a jury trial as to damages in a default situation if it seems to be the best means of assessing damages ... neither side has a right to demand a jury trial on damages.") (footnotes omitted).

[46] *In re Dierschke*, 975 F.2d 181, 185 (5th Cir. 1992) (quotation marks and footnote omitted).

[47] *See also Henry v. Sneiders*, 490 F.2d 315, 318 (9th Cir. 1974) and cases cited therein; *Fidelity & Deposit Co. v. United States*, 187 U.S. 315, 319–21 (1902); *Dyson v. Rhode Island Co.*, 57 A. 771 (1904) (tracing the history of assessing damages in default cases in the courts of England).

[48] 10 Moore et al., *supra* note 45, § 55.32[2][c], at 55–48 ("When the amount of damages is not certain and cannot be determined from the record, the court must make further inquiry. However, the court need not hold an evidentiary

¶ 49. The federal courts have also held that no Seventh Amendment right to a jury trial on damages exists in cases in which default judgment was ordered as a sanction for discovery violations.[49]

¶ 50. The federal cases support our conclusion in the present case that by violating a circuit court's discovery orders and by incurring a judgment by default, a party waives the constitutional right of trial by jury on the issue of damages.

¶ 51. We acknowledge that at least one state supreme court has reached a conclusion that conflicts with our holding in the present case. In *Curbelo v.*

---

hearing with oral testimony"); § 55.32[2][d], at 55–49 ("[T]he court has the discretion to hold a hearing or inquest into the amount of damages") (footnote omitted); § 55.32[2][e], at 55–50 ("The court may, in its discretion, hold a jury trial on a request for a default judgment.") (footnote omitted).

*See* 10A Wright et al., *supra* note 45, § 2688, at 57–58, 64 (the court determines the nature of the hearing on damages).

[49] *See Olcott v. Del. Flood Co.*, 327 F.3d 1115, 1124 (10th Cir. 2003) (holding, in a case in which the district court entered default judgment pursuant to Fed. R. Civ. P. 37(b)(2) for defendants' willful discovery violations, that "[d]efendants do not have a constitutional right to a jury trial following entry of default") (citations omitted); *Goldman, Antonetti, Ferraiuoli, Axtmayer & Hertell v. Medfit Int'l, Inc.*, 982 F.2d 686, 692 n.15 (1st Cir. 1993) ("[A]fter a default judgment has been entered under Fed. R. Civ. P. 37(b)(2), a party has no right to jury trial under either Fed. R. Civ. P. 55(b)(2) . . . or the Seventh Amendment.") (citations and quotation marks omitted); *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1414 (9th Cir. 1990), *cert. denied sub nom. Lewis & Co. v. Thoeren*, 498 U.S. 1109 (1991) (same) (citation omitted).

*See* 10A Wright et al., *supra* note 45, § 2688, at 69 (in a default situation neither party has a right to demand a jury trial on damages).

*Ullman,* 571 So. 2d 443 (Fla. 1990), the Florida Supreme Court held that "[w]hen a jury trial has been requested by the plaintiff, the defendant is still entitled to a jury trial on the issue of damages even though a default has been entered against the defendant for failure to answer or otherwise plead."[50]

¶ 52. *Wood v. Detroit Automobile Inter-Insurance Exchange,* 321 N.W.2d 653 (Mich. 1982), is consistent with our holding in the present case. In *Wood,* the defendant answered but then violated the court's discovery order. The court granted the plaintiff's motion for a default judgment. On appeal, the Supreme Court of Michigan rejected the rule that a defendant's default constitutes a waiver of Michigan's state constitutional right of trial by jury when the trial court has an evidentiary hearing on damages.[51] However, the *Wood* decision rests largely on the application of procedural rules that, unlike Wisconsin's Rules of Civil Procedure, made clear that a defendant's default could not serve as a waiver of Michigan's state constitutional right of trial by jury in civil cases. The difference between *Wood* and the present case lies in Michigan's procedural rules governing the manner in which the right to trial by jury may be waived.

---

[50] *Curbelo v. Ullman,* 571 So. 2d 443, 444 (Fla. 1990) (citation omitted).

[51] *Wood v. Detroit Auto. Inter-Ins. Exch.,* 321 N.W.2d 653, 658–59 (1982).

At the time of the *Wood* case, Article I, Section 14 of the Michigan Constitution provided in relevant part that "[t]he right of trial by jury shall remain, but shall be waived in all civil cases unless demanded by one of the parties in the manner prescribed by law." *See Wood,* 321 N.W.2d at 657 (quoting Mich. Const. art. I, § 14 (1963)).

¶ 53. The *Wood* court relied upon Michigan's default judgment rule, Rule 520 of the Michigan General Court Rules of 1963.[52] In cases in which a trial court determined that further proceedings were necessary to determine damages in default judgment situations, Rule 520 expressly mandated "a right of trial by jury to the parties when and as required by the constitution."[53] The *Wood* court therefore held that "a defaulting party who has properly invoked his right to jury trial retains that right if a hearing is held to determine the amount of recovery."[54]

¶ 54. Unlike the Michigan General Court Rules of 1963, Wisconsin's Rules of Civil Procedure do not require the circuit court to recognize a defaulting defendant's state constitutional right of trial by jury when the court determines that an evidentiary hearing will be held to determine the amount of damages to be awarded. Instead, the law in Wisconsin is clear that it lies within the circuit court's discretion to determine the appropriate procedure for deciding factual issues in default judgment cases and that the defaulting party therefore has no right of trial by jury. This distinction between Michigan and Wisconsin law, pertaining not to the scope of the state constitutional right to jury trials

---

[52] *Wood,* 321 N.W.2d at 659–60.

Rule 520 of the Michigan General Court Rules of 1963 corresponds to Rule 2.603 of the Michigan Court Rules of 1985 (2008).

[53] *Wood,* 321 N.W.2d at 659 (quoting Rule 520.2(2) of the Michigan General Court Rules of 1963) (emphasis omitted).

[54] *Wood,* 321 N.W.2d at 659.

*See also id.* at 660 ("[T]he trial court in the case at bar, having determined that a hearing was necessary on the question of damages, was obliged to accord defendant its properly preserved right to jury trial.") (footnote omitted).

in civil cases but rather to matters of procedural law governing waiver of that right, explains the different holding in *Wood* and in the instant case.

¶ 55. For the reasons set forth, we conclude that the circuit court did not violate the defendant's right of trial by jury under Article I, Section 5 of the Wisconsin Constitution when it denied the defendant's motion for a jury trial on the issue of damages. The defendant waived its right of trial by jury in the manner set forth in Wis. Stat. §§ (Rule) 804.12 and 806.02 by violating the circuit court's discovery order and by incurring a judgment by default.

## II

¶ 56. We next address the question whether the circuit court erred in denying the plaintiff's claim for punitive damages under Wis. Stat. § 895.043(3).

¶ 57. The parties disagree about the basis for the circuit court's denial of the plaintiff's claim for punitive damages. They disagree about whether the circuit court denied the plaintiff's punitive damages claim after considering only the allegations of the complaint or whether the circuit court based its denial on evidence the plaintiff presented at the evidentiary hearing on damages.

¶ 58. The plaintiff argues that the circuit court's denial of punitive damages was based on a procedural error, namely that the circuit court erroneously limited its determination of the plaintiff's punitive damages claim to the allegations in the complaint. The plaintiff asks this court to reverse the circuit court's denial of punitive damages and remand the issue of punitive damages to the circuit court. According to the plaintiff, this court should hold that the circuit court erred in

limiting its determination of punitive damages to the allegations in the complaint.

¶ 59. The defendant argues that the circuit court considered all the evidence presented and did not limit itself to considering the allegations in the complaint when addressing the plaintiff's claim for punitive damages. According to the defendant, after examining the record the circuit court concluded as a matter of law that the plaintiff was not entitled to punitive damages. The defendant asks this court to affirm the circuit court and hold that because the defendant was merely silent or failed to warn the plaintiff about the employee who converted the plaintiff's funds, the defendant is as a matter of law not subject to punitive damages.

¶ 60. The court of appeals concluded that the circuit court erred in excluding the plaintiff's evidence supporting the award of punitive damages and remanded the issue of punitive damages to the circuit court.

¶ 61. We turn first (A) to deciding whether a circuit court is limited to the allegations in the complaint in determining whether to award punitive damages in a judgment by default. We then (B) examine the record to determine whether the circuit court limited its consideration of the issue of punitive damages to the allegations of the complaint. After resolving these two questions, this court (C) determines whether the circuit court erred in denying the plaintiff's claim for punitive damages.

A

■

¶ 62. Whether a circuit court is limited to the allegations in the complaint in determining whether to award punitive damages in a judgment by default

presents a question of law that this court determines independently of the circuit court and court of appeals but benefiting from these courts' analyses.[55]

¶ 63. We agree with the court of appeals in the present case that the circuit court was required to determine whether proof of any fact was needed to determine whether the defendant acted "maliciously toward the plaintiff or in an intentional disregard of the rights of the plaintiff,"[56] justifying an award of punitive damages. The case law is clear that a circuit court is not limited to considering only the allegations of the complaint. As a general proposition, some form of inquiry beyond the complaint is required to determine the merits of a punitive damages claim.

---

[55] *See Apex Electronics Corp. v. Gee,* 217 Wis. 2d 378, 384, 577 N.W.2d 23 (1998) (whether the circuit court erred by awarding the plaintiff punitive damages solely on the basis of the complaint presents a question of law involving statutory interpretation).

[56] Wis. Stat. § 895.043(3).

Section 895.043(3) sets forth the conduct that may give rise to punitive damages, providing in full that "[t]he plaintiff may receive punitive damages if evidence is submitted showing that the defendant acted maliciously toward the plaintiff or in an intentional disregard of the rights of the plaintiff."

In order to meet the requirements of Wis. Stat. § 895.043(3), the plaintiff's evidence must show that the defendant acted "with a purpose to disregard the plaintiff's rights, or [was] aware that his or her acts [were] substantially certain to result in the plaintiff's rights being disregarded." *Strenke v. Hogner,* 2005 WI 25, ¶ 38, 279 Wis. 2d 52, 694 N.W.2d 296. Such a showing requires that the defendant's "act or course of conduct [was] deliberate," that "the act or conduct . . . actually disregard[ed] the rights of the plaintiff," and that "the act or conduct [was] sufficiently aggravated to warrant punishment by punitive damages." *Strenke,* 279 Wis. 2d 52, ¶ 38.

¶ 64. *Apex Electronics Corp. v. Gee,* 217 Wis. 2d 378, 577 N.W.2d 23 (1998), upon which the court of appeals relied, governs the instant case. In *Apex Electronics,* the circuit court awarded judgment by default under Wis. Stat. § (Rule) 806.02 on a punitive damages claim solely on the basis of the complaint. Applying both Wis. Stat. § (Rule) 806.02 (governing default judgments) and § 895.043 (governing punitive damages), the supreme court concluded "that a circuit court entering a default judgment on a punitive damages claim must make inquiry beyond the complaint to determine the merits of the punitive damages claim and the amount of punitive damages, if any, to be awarded."[57] The supreme court explained that "[w]ithout conducting an inquiry beyond the complaint, a circuit court cannot determine whether a defendant's conduct justifies a punitive damages award and, if an award is justified, what amount would accomplish the purposes of punitive damages while satisfying the requirements of due process."[58] The *Apex Electronics* court concluded that the circuit court had erred when it relied solely on the plaintiff's demand in the complaint for a certain sum in punitive damages and "when it failed to receive proof of facts necessary to determine the merits of the punitive damages claim and the amount of punitive damages, if any, to be awarded."[59]

¶ 65. *Apex Electronics* controls the present case. Whether the circuit court awards or refuses to award punitive damages in a judgment by default, the circuit court must ordinarily make inquiry beyond the com-

[57] *Apex Electronics,* 217 Wis. 2d at 390.
[58] *Id.*
[59] *Id.* at 391.

plaint to determine the merits of the punitive damages claim and the amount of punitive damages, if any, to be awarded. We thus conclude, as the court did in *Apex Electronics,* that a circuit court in ruling on a claim for punitive damages errs in basing its decision solely on the allegations in the plaintiff's complaint. The circuit court must give the complaining party an opportunity to prove facts in support of the punitive damages claim beyond those alleged in the complaint.[60]

B

¶ 66. We now turn to the record to determine whether the circuit court in the present case limited its consideration of the issue of punitive damages to the allegations of the complaint. We acknowledge at the outset that the record, which consists in relevant part of lengthy transcripts of two separate hearings conducted by the circuit court, is somewhat difficult to interpret. However, after examining the record as a whole, we conclude, as did the court of appeals, that the circuit court considered only the allegations of the complaint.

¶ 67. At the hearing on the defendant's motion for a jury trial on the issue of damages, the plaintiff requested an opportunity to present witnesses to testify about facts that were not alleged in the plaintiff's complaint but that supported the plaintiff's punitive damages claim. The plaintiff stated to the court that he wanted "the opportunity to come in with witnesses" not only to "establish the amount of money that was stolen

---

[60] As we explained previously, the circuit court determines the method for receiving proof in determining damages in a default judgment.

from [the plaintiff]" but also to establish "the circumstances of those thefts." The plaintiff explained that his purpose in presenting witness testimony about the circumstances of the thefts was to "show the egregious . . . manner in which [the defendant] conducted itself so that [the plaintiff could] legitimately prepare a record . . . that will justify punitive damages against [the defendant]." The plaintiff acknowledged that it would be difficult for him to make the case for punitive damages based solely on the "bare bones" allegations in his complaint.

¶ 68. The circuit court ruled that the plaintiff could introduce witness testimony regarding the amount that was stolen from the plaintiff but that the plaintiff could not introduce witness testimony about the defendant's conduct in relation to the plaintiff's request for punitive damages. The circuit court held that although the plaintiff had a right to argue for punitive damages at the evidentiary hearing, the plaintiff would have to make such argument "from the admitted facts in the complaint." In discussing the plaintiff's right to argue for punitive damages, the circuit court stated at various points that the plaintiff was "limited to the facts in the complaint"; that the plaintiff had "the right to argue based on what it is that [he had] pled"; that the circuit court need not "get into the business of hearing testimony at all concerning all of these other matters"; that the circuit court did not "intend to get into the question of all of the activity that went on here"; and that the circuit court would consider "based on the admitted facts, now admitted facts in the complaint, whether [the plaintiff was] entitled to punitive damages or not."

¶ 69. The circuit court limited the plaintiff to the allegations of the complaint as follows:

I'm only going to allow the plaintiff to prove the number of dollars involved and, of course, you can argue from the admitted facts in the complaint. The complaint is deemed admitted in all of its aspects. It is deemed admitted. *And you can argue for punitive damages based on that,* of course. But I'm not going to get into a trial on the merits here. I believe the allegations of the complaint are deemed admitted for purposes of this proceeding. *And that's what you're going to be stuck with.*[61]

¶ 70. An exchange between the circuit court and counsel for defendant also makes clear the circuit court's intention to decide the issue of punitive damages solely on the facts alleged in the plaintiff's complaint. After the circuit court informed the defendant's counsel that it would decide the punitive damages issue on "[t]he facts that are in [the plaintiff's] complaint," the following exchange then ensued:

[DEFENDANT'S COUNSEL]: All of them?

THE COURT: All of them.

[DEFENDANT'S COUNSEL]: Nothing else?

THE COURT: Nothing else. Well, the theory on defaults is that you are limited to what's in your complaint because in a typical default situation where someone doesn't answer, the theory is that if they knew you were going to ask for something else, they might have answered. . . . They are limited to the facts in the complaint. . . .

¶ 71. After the hearing on the defendant's motion for a jury trial on damages, the plaintiff attempted to submit documentary evidence in support of the plaintiff's punitive damages claim. The documentary

---

[61] Emphasis added.

evidence was attached to an affidavit, signed by the plaintiff's counsel, describing the evidence. A supplemental brief also accompanied the evidence and the affidavit. In the supplemental brief, the plaintiff acknowledged that the circuit court had ruled at the motion hearing that the plaintiff "may not present witnesses to testify regarding the facts which Plaintiff believes support an award of punitive damages." The plaintiff described the documentary evidence accompanying the brief as evidence pertaining to facts already known to the circuit court through the depositions.

¶ 72. At the evidentiary hearing on damages, the plaintiff argued for punitive damages, relying upon the documentary evidence that the plaintiff had submitted to the circuit court in response to the circuit court's ruling that the plaintiff could not introduce witnesses to testify about facts supporting his punitive damages claim. The circuit court excluded this documentary evidence on hearsay grounds.

¶ 73. Immediately after the circuit court ruled that the plaintiff's documentary evidence would be excluded, the plaintiff again requested to present a witness, Ted Frydrych, to testify in support of the plaintiff's punitive damages claim. Mr. Frydrych is another of the defendant's accountholders whose assets allegedly were stolen by the same employee who allegedly stole from the plaintiff. Counsel for the plaintiff stated that it was her "offer of proof that we can establish all the facts set forth in my affidavit as well as the affidavit of Frydrych through his live testimony."[62]

---

[62] Mr. Frydrych's affidavit was among the documentary evidence that the plaintiff submitted to the court after the hearing on the defendant's motion for a jury trial on the issue of damages and that the court ultimately excluded as evidence.

In response, the circuit court stated, "All right, that affidavit will stand as your offer of proof."

¶ 74. The circuit court did not state whether it accepted counsel's offer of proof or whether it would consider the offer of proof when deciding the issue of punitive damages. When it decided punitive damages at the close of the evidentiary hearing, the circuit court made no reference to the offer of proof, to counsel's affidavit, to the affidavit of Mr. Frydrych, or to counsel's request to present Mr. Frydrych's live testimony. Mr. Frydrych never testified at the evidentiary hearing on damages. The circuit court decided punitive damages without making any clear reference to facts or evidence beyond the plaintiff's complaint.

¶ 75. At the close of the evidentiary hearing on damages, the circuit court held that judgment by default would be rendered against the defendant in the amount of $514.010 plus costs and interest, for a total judgment of $525,901.41. The circuit court also denied the plaintiff's request for punitive damages. The circuit court reasoned that "none of the money . . . that was taken from the plaintiff went into the pocket of [the defendant] other than its employee." The circuit court stated: "I do not believe that if the district attorney were to prosecute [the defendant] for theft, that such a prosecution would be successful because I don't think they can prove intent." The circuit court stated in conclusion that the defendant "behaved very badly" but that the court did "not believe that punitive damages against [the defendant] in this case would be appropriate."

¶ 76. The defendant contends that the circuit court considered the merits of the plaintiff's claim for punitive damages. It points to the circuit court's observations during the hearing on the defendant's motion

for a jury trial on the issue of damages that some of the facts and evidence discussed by the plaintiff "sounds like negligent practice" and that the plaintiff seemed to have "a pretty high burden" of showing that the defendant was not "just sloppy" but instead acted in intentional disregard of the plaintiff's rights. According to the defendant, these statements of the circuit court show that the circuit court considered facts beyond those alleged in the complaint and concluded that the plaintiff was unable to prove his claim for punitive damages.

¶ 77. We disagree with the defendant. The circuit court's passing observations about the plaintiff's claim for punitive damages do not detract from the clarity of the circuit court's numerous comments that the circuit court was limiting the plaintiff to arguing from the facts alleged in his complaint. In any event, the circuit court's comments do not demonstrate a careful consideration of the record and an analysis of the law of punitive damages to which the parties were entitled.

¶ 78. Taken as a whole, the record supports the plaintiff's assertions that the circuit court decided the issue of punitive damages solely on the basis of allegations in the plaintiff's complaint.

C

¶ 79. Finally, we determine whether the circuit court erred in denying the plaintiff's claim for punitive damages. The circuit court erred in limiting its decision to the allegations of the complaint, in failing to review the entire record, and in failing to give the plaintiff an opportunity to present evidence to support his claim for punitive damages. Under these circumstances, the merits of the plaintiff's claim for punitive damages are not

before this court, and we do not address them. We remand the matter to the circuit court to allow the circuit court an opportunity to exercise its discretion in determining the nature of the hearing and to determine whether punitive damages are warranted.

¶ 80. For the reasons set forth, we conclude that the circuit court erred in deciding the plaintiff's punitive damages claim solely on the basis of allegations in the complaint and in denying the plaintiff an opportunity to prove additional facts in support of the punitive damages claim.

* * * *

¶ 81. In sum, we affirm the decision of the court of appeals. We affirm, as did the court of appeals, the circuit court's denial of the defendant's request for a jury trial on the issue of damages. The circuit court did not violate the defendant's right of trial by jury under Article I, Section 5 of the Wisconsin Constitution when it denied the defendant's motion for a jury trial on the issue of damages. The defendant waived its right of trial by jury in the manner set forth in Wis. Stat. §§ (Rule) 804.12(2) and 806.02. We reverse, as did the court of appeals, the circuit court's ruling denying punitive damages. We conclude that the circuit court erred in deciding the plaintiff's punitive damages claim solely on the basis of facts alleged in the complaint and in denying the plaintiff an opportunity to prove additional facts in support of the punitive damages claim. We remand the issue of punitive damages to the circuit court to exercise its discretion in determining the nature of the hearing on punitive damages and to determine whether punitive damages are warranted.

¶ 82. Accordingly, we affirm the decision of the court of appeals affirming in part and reversing in part the judgment and order of the circuit court.

*By the Court.*—The decision of the court of appeals is affirmed, and the cause is remanded to the circuit court for further proceedings consistent with this opinion.[63]

¶ 83. ANNETTE KINGSLAND ZIEGLER, J. (*concurring*). I concur, but write separately on the issue of punitive damages because I do not conclude that the circuit court decided the plaintiff's punitive damages claim solely on the basis of the facts alleged in the complaint. In this case, what the circuit court judge relies upon in making his ruling is not clear. It is not clear from the record whether the judge considered the offer of proof and determined as a matter of law that the plaintiff could not meet the level of conduct necessary for punitive damages to be awarded or whether the circuit court decided the issue based upon the evidence presented, i.e., the pleadings and WMAS's conduct.

¶ 84. On one hand, the record is not absolutely clear that the judge precluded the plaintiff from introducing testimony at trial on punitive damages because parts of the record indicate that the plaintiff was to introduce evidence at the two-day hearing, other than facts established by the complaint, on all damages including punitive damages.

¶ 85. On February 20, 2006, the circuit court conducted a motion hearing. At that hearing, the transcript reflects the following:

> THE COURT: . . . It seems to me what we are here to do is to have the plaintiff prove what the damages

---

[63] The court of appeals remanded the cause for consideration of other issues not involved in this review.

are. That seems to me that's all we are looking at. And, obviously, you have the right to argue based on what it is that you've pled. You have the right to argue that those damages should include punitive damages. But I think we are only here for a hearing on the question of dollars. How many dollars. So I don't intend to get into the question of all of the activity that went on here.

I'm going to assume that the facts that are alleged in the complaint are true. I'm going to assume that, and therefore, plaintiff is entitled to judgment. The only question is what amount. How many dollars? And I'm going to give the plaintiff a chance to prove that.

[PLAINTIFF'S COUNSEL:] Your honor, just for my clarification, we did plead in the amended complaint, we did ask for punitive damages.

THE COURT: All right. I'm going to hear you on that.

[PLAINTIFF'S COUNSEL:] Okay.

¶ 86. The circuit court then discussed the fact that the plaintiff would not need to introduce evidence regarding the facts that are already admitted by default and that the defendant would be precluded from arguing that the damages should be mitigated. When the answer was stricken, so was the defense of mitigation of damages. While the circuit court precluded the parties from retrying the merits of the complaint for liability purposes, the circuit court did allow the parties to introduce evidence regarding damages. The February 20 record further reflects the following:

THE COURT: ... The only issue is how many dollars flow from those facts, how many dollars of

damages? And based on the admitted facts, now admitted facts in the complaint, whether they are entitled to punitive damages or not.

. . . .

[PLAINTIFF'S COUNSEL:] But my understanding of the law is whether or not someone is entitled to punitives depends on the circumstances on which the tort was committed. So although the Court is establishing as given that the tort was committed, we, if I understand you correctly, will be entitled to present evidence on the circumstances on which the tort was committed to allow us to prove our punitive damages claim.

After further discussion the circuit court stated:

THE COURT: . . . This is a hearing on damages in a default situation. I'm only going to allow the plaintiff to prove the number of dollars involved and, of course, you can argue from the admitted facts in the complaint. The complaint is deemed admitted in all of its aspects. It is deemed admitted. And you can argue for punitive damages based on that, of course. . . .

¶ 87. Accordingly, from this part of the record it appears that the plaintiff would have his day in court to prove punitive damages, but the plaintiff was instructed to not be duplicitous regarding facts already proven because of the default.

¶ 88. On the other hand, at the two-day trial, it is apparent that plaintiff's counsel believed that the plaintiff was precluded, by court order, from introducing witnesses regarding punitive damages, and the record reflects that the circuit court judge did not allow such testimony. At that trial, the plaintiff called two witnesses: George Kiskunas testified on accounting mat-

ters, and Dr. Rao testified on his own behalf. Plaintiff's counsel attempted to introduce an offer of proof and also asked to present live testimony. When discussing evidence being introduced, in the form of documents rather than live witnesses, the following transpired:

> [PLAINTIFF'S COUNSEL:] ... It was intended to be responsive to the Court's ruling that certain forms of evidence would not be presented at the hearing. And if I understand the Court's ruling correctly, it was not so much that punitive damages were an impossibility here. I mean, we looked at the language in the complaint, and I think the Court's review of that revealed that, yeah, we're talking about some intentional torts here. But what the Court did not want to do is have us do a hearing on those allegations. I completely respect that, and I want to be able to provide the information that I feel is essential to support a punitive for exemplary damages ruling but obviously do not want to violate the Court's order.
>
> . . . .
>
> And, Your Honor, in the attachments here, I've got a couple of affidavits. The affidavit I signed takes, again, documents that we obtained from WMA[S] in discovery that I believe support our request for punitive damages. And I did not take stuff that simply establishes the allegations in the pleadings, but stuff that aggravates the conduct that is conclusively established in the pleadings to a point where I think it will show that punitive or exemplary damages are appropriate. Stuff that we took out, segments of deposition where Mr. Novak talks about the environment at WMA[S] where fraud is tolerated. We took stuff from Mr. Ted Frydrych that shows that his affidavits of forgery that show an identical course of conduct with the $10,000 thefts for the year preceding the thefts from David Novak. And we took e-mails sent by Mr. Frydrych and Jacque Black to WMA[S] asking about the status of the

investigation into the thefts for Mr. Frydrych's account, and we submitted responses by WMA[S] which is essentially, you know, talk to this person, talk to that person, talk to this person. With increasing desperation Mr. Frydrych inquired into the status of the funds and meeting a brick wall.

Finally, we submitted notes from Matt Lucky, the compliance manager, his journal entry saying that, after a conversation with the SCC, the SCC's primary concern regarding Mr. Frydrych and the situation with WMAS was that WMAS take care of Mr. Frydrych.

Mr. Frydrych's affidavit is further attached indicating that he never received any money to compensate him for the loses he suffered as a result of Mr. Novak's thefts while he was affiliated with WMAS. Those are all facts. We had Mr. Frydrych prepared to come and testify about that stuff. It's my understanding the Court didn't want to hear it. We prepared it in affidavit form. I'd ask the Court to accept the affidavits as evidence that would establish our right to punitive and/or exemplary damages.

¶ 89. In response, the circuit court, at the February 27 hearing, stated:

THE COURT: Well, I think you've made a record. It's obvious that I'm not sure at what point WMA[S] decided to batten down the hatches, but it's pretty obvious that they haven't treated Mr. Rao very well. Whether that gives rise to punitive damages or not is something I'll hear your argument about at the conclusion. But it's perfectly obvious here that, just from my experience with this case, that poor Mr. Lanphier here was repeatedly having to come back to court and hold his hat in his hand because WMAS [] didn't do what they were supposed to do, and that happened repeatedly.

668

And when there was an investigation or when counsel for Dr. Rao made an inquiry, they immediately turned everything over to lawyers and started screaming attorney/client privilege, and they absolutely refused to do anything until this Court had to grab them by the scruff of the neck and forced them to do that. I think all of that goes to the question of whether there are punitive damages, but whether they are entitled to punitive damages is something I will hear your argument at the end of the case. There certainly is some evidence in the record, that's for sure.

Counsel for the defense then sought to clarify what evidence was in the record and stated:

[DEFENDANT'S COUNSEL:] . . . I previously moved to strike everything except the deposition testimony attached to their supplement to hearing brief, and I believe all of those documents fall in the same category as we just did Exhibit 10. They are all hearsay. There's no foundation for any of these documents. I don't have a right to cross-examine Mr. Frydrych, Mr. Novak, the other people who generated these documents attached to the hearing brief. If they are making an offer of proof, I understand that, but if I think she's asking for these documents to be admitted into evidence, and they should not be.

THE COURT: I think she is and I'm not going to.

[DEFENDANT'S COUNSEL:] Thank you.

[PLAINTIFF'S COUNSEL:] Your Honor, just to clarify. These are documents. We've got the binders here. I can show you that these are documents that were produced in discovery by WMAS. These are WMAS's records. We're not surprising them. We're just trying to use the information that — and Lord knows we've worked hard enough to get it. We're just trying to use the limited tools that we've gathered in this inves-

tigation — it feels like an investigation to me — in this litigation against them, because otherwise what do we have? We can bring in Dr. Rao and he can say they were horrible to me, but in punitive damages, it talks about the need to punish and deter. We can talk about how horrible they've been for many other people. We've fought tooth and nail for that stuff, and this Court — it is relevant because it is relevant to show a pattern of conduct, to show intent, right now most crucially to us to show the need for punitive damages.

THE COURT: I think I can make some conclusions about intent just based on how WMAS has conducted itself during this litigation. I really don't think it's something I need, and I do think Counsel is right. You should have the right to cross-examine.

[PLAINTIFF'S COUNSEL:] Your Honor, can we bring Mr. Frydrych in? Mr. Frydrych is more than willing to testify. He hasn't had his day in court yet, and he won't until the criminal proceedings. Your Honor, [co-counsel] is encouraging me to do the technical thing and make an offer of proof, but obviously, I signed this under oath and it's my offer of proof that we can establish all the facts set forth in my affidavit as well as the affidavit of Frydrych through his live testimony.

The circuit court responded, "All right. Well, that affidavit will stand as your offer of proof." The defense then proceeded with calling its own witnesses.

¶ 90. At the close of trial, when ultimately deciding the issue of punitive damages, the circuit court stated:

THE COURT: I find further — well, addressing myself to the question of punitive damages. I believe that Mr. Fitzpatrick is correct that Section 895.80 has to be construed strictly. I don't — it's apparent that none of the money that went from the — that was

670

taken from the plaintiff went into the pocket of WMAS other than its employee, David Novak. I do not believe that if the district attorney were to prosecute WMAS for theft, that such a prosecution would be successful because I don't think they can prove intent. And I do not believe that punitive damages against WMAS in this case would be appropriate.

Now, I realize that WMAS has acted in a manner which was very clearly designed to obstruct and to impede any recovery by the plaintiff and to do virtually anything it could to cover up the wrongs that had been committed. And certainly in the course of this litigation, they have behaved very badly. But I don't think that I can from that conclude that the plaintiff is entitled to punitive damages.

¶ 91. The majority concludes that the circuit court precluded the plaintiff from introducing witnesses to support his punitive damages claim and specifically limited the plaintiff to the facts alleged in the complaint. Majority op., ¶¶ 69–70, 73. The majority characterizes the circuit court's action as if the circuit court decided that it could not—as a matter of law—look outside the complaint. *See* majority op., ¶¶ 66–67. I concur because the record is unclear that the circuit court relied solely on the facts of the complaint. It is unclear as to whether the circuit court judge relied on the testimony presented, the admitted allegations of the complaint, and WMAS's conduct during trial or whether, given the offer of proof, the circuit court determined that the conduct did not rise to the level of punitive damages as a matter of law.

¶ 92. Clearly, a circuit court is not required to conduct a trial on punitive damages just because punitive damages are pled. The statute calls for specific

egregious behavior. Wis. Stat. § 895.043.[1] Circuit courts are vested with authority to determine whether a punitive damages claim survives to trial. That determination can occur in a variety of ways. Here, we are not sure what the circuit court did in reaching its conclusion that punitive damages are not warranted.

¶ 93. The majority states that a circuit court should exercise its discretion in determining the nature of the hearing on punitive damages and in determining whether punitive damages are warranted. Majority op., ¶ 79. I agree. The circuit court should evaluate the claim for punitive damages and determine whether a trial is warranted. Clearly, not all claims for punitive damages warrant a trial. Here, we affirm the court of appeals' determination, "the court may hold an evidentiary hearing, consider Rao's offer of proof to determine if an evidentiary hearing is warranted, or allow Rao an opportunity to submit additional proof to support his case for punitive damages before determining whether to hold a full evidentiary hearing." *Rao v. WMA Securities, Inc.*, No. 2006AP813, unpublished slip op., ¶ 42 (Wis. Ct. App. Mar. 29, 2007). The circuit court may ultimately determine that a trial is appropriate, but it may also determine that the matter can be disposed of short of trial. The circuit court has full discretion to make that determination on remand.

¶ 94. On one hand, the record indicates that the circuit court gave the plaintiff the opportunity to introduce evidence at trial and through an offer of proof, but the circuit court concluded that based on the evidence,

---

[1] Wisconsin Stat. § 895.043(3), "Standard Of Conduct," provides that "[t]he plaintiff may receive punitive damages if evidence is submitted showing that the defendant acted maliciously toward the plaintiff or in an intentional disregard of the rights of the plaintiff."

the plaintiff was not entitled to punitive damages. On the other hand, the record indicates that the plaintiff was precluded from offering testimony from witnesses who were relevant to the issue of punitive damages and that the circuit court reached its decision without hearing the relevant testimony. Because the circuit court's decision does not assist us in determining what the circuit court considered in reaching its conclusion not to award punitive damages, this case must be remanded.

¶ 95. However, the majority concludes that the circuit court "erred in deciding the plaintiff's punitive damages claim solely on the basis of allegations in the complaint and in denying the plaintiff an opportunity to prove additional facts in support of the punitive damages claim." Majority op., ¶ 80. The record is not so clear, and thus, I write separately. Whether the circuit court relied solely on the complaint in making its ruling is subject to question.

¶ 96. As a result, I concur with the majority that a record must be made regarding whether, and to what extent, punitive damages should be awarded. I would afford the circuit court judge the flexibility of properly considering that issue as a matter of law or after a hearing. I would afford the circuit court judge the full opportunity to decide how best to proceed.

¶ 97. For the foregoing reasons I concur.

¶ 98. DAVID T. PROSSER, J. (*dissenting*). The majority holds that defendant WMA Securities, Inc. (WMAS) waived the right to jury trial on the issue of damages because of discovery violations leading to a court-imposed judgment by default. Majority op., ¶¶ 5, 81. It asserts that judgment by default under Wis. Stat. § 804.12(2)(a)3. triggers the application of Wis. Stat.

§ 806.02, and that all procedures for determining damages under the latter statute are within the discretion of the circuit court, subject only to review for an erroneous exercise of discretion. *See* majority op., ¶¶ 30, 38, 39–45. Because the majority's decision diminishes the constitutional right of jury trial in civil cases and is grounded in a mistaken theory of waiver, I respectfully dissent.

## I. INTRODUCTION

¶ 99. The issue presented is whether WMAS has the right to a jury trial on the issue of damages after the circuit court entered a judgment by default as a sanction for WMAS's discovery violations. WMAS has not challenged the judgment against it on the issue of liability, but it contends that the court may not deprive it of a jury determination as to damages. This court granted WMAS's petition for review because it raised an important question of constitutional law.

¶ 100. In Wisconsin, the right of jury trial in civil cases is provided by both the Wisconsin Constitution and the Wisconsin Statutes. The Wisconsin Constitution, Article I, Section 5, declares that:

> The right of trial by jury shall remain inviolate, and shall extend to all cases at law without regard to the amount in controversy; but a jury trial may be waived by the parties in all cases in the manner prescribed by law. Provided, however, that the legislature may, from time to time, by statute provide that a valid verdict, in civil cases, may be based on the votes of a specified number of the jury, not less than five-sixths thereof.

Wisconsin Stat. § 805.01 reaffirms the right to jury trial, but requires that it be claimed:

> (1) Right preserved. The right of trial by jury as

674

declared in article I, section 5, of the constitution or as given by a statute and the right of trial by the court shall be preserved to the parties inviolate.

(2) Demand. Any party entitled to a trial by jury or by the court may demand a trial in the mode to which entitled at or before the scheduling conference or pretrial conference, whichever is held first. The demand may be made either in writing or orally on the record.

¶ 101. The right of jury trial in a civil case can be waived. Wisconsin Stat. § 805.01(3) implements the waiver language in the constitution by setting out "in the manner prescribed by law" the circumstances constituting waiver. Wis. Const. art. I, § 5. Wisconsin Stat. § 805.01(3) states:

(3) Waiver. The failure of a party to demand in accordance with sub. (2) a trial in the mode to which entitled constitutes a waiver of trial in such mode. The right to trial by jury is also waived if the parties or their attorneys of record, by written stipulation filed with the court or by an oral stipulation made in open court and entered in the record, consent to trial by the court sitting without a jury. A demand for trial by jury made as herein provided may not be withdrawn without the consent of the parties.

¶ 102. Subsection (3) uses the term "waiver" in two different senses. First, technically, "waiver" is the intentional relinquishment or abandonment of a known right. *See United States v. Olano,* 507 U.S. 725, 733 (1993); *Johnson v. Zerbst,* 304 U.S. 458, 464 (1938). A written stipulation filed with the court or an oral stipulation made in open court, consenting to trial by the court, constitute waivers in the traditional and technical sense of the term. By contrast, a party's

675

failure to demand a jury trial is, strictly speaking, a "forfeiture,"—that is, a failure to timely assert a right. *Olano,* 507 U.S. at 733; *see also Freytag v. Comm'r,* 501 U.S. 868, 894–95 n.2 (1991) (Scalia, J., concurring) (distinguishing between waiver and forfeiture); *State v. Kelty,* 2006 WI 101, ¶¶ 62–63, 294 Wis. 2d 62, 716 N.W.2d 886 (Abrahamson, C.J., concurring) (cautioning against using "waiver" and "forfeiture" interchangeably).

¶ 103. A slight variation on the kind of "waiver" described in Wis. Stat. § 805.01(3) is found in Wis. Stat. § 814.61(4), which provides that if a party fails to pay the jury fee within the time permitted to demand a jury trial, "no jury may be called in the action, and the action may be tried to the court without a jury." *See State ex rel. Prentice v. County Ct. of Milwaukee County,* 70 Wis. 2d 230, 239, 234 N.W.2d 283 (1975). This subsection creates a uniform rule supplementing the requirements for any party to demand a jury trial. It provides, in essence, that a demand for trial by jury in a civil case is not perfected or not complete if the jury fee is not paid.

¶ 104. These forms of "waiver" are not the only ways that a party can surrender the constitutional right of jury trial. Looking to the default judgment statute, a civil defendant gives up the right to a trial of *any* sort "if no issue of law or fact has been joined and if the time for joining issue has expired," Wis. Stat. § 806.02(1), or if "a defendant fails to appear in an action," Wis. Stat. § 806.02(3), or if a defendant who has appeared in an action "fails to appear at trial." Wis. Stat. § 806.02(5). These defaulting actions by a party may be characterized as either forfeiture or waiver, depending upon the party's state of mind.

¶ 105. In short, a party can surrender the right of civil jury trial by intentionally relinquishing the right or by failing to assert the right, both coming under the generic heading of "waiver."

¶ 106. When a circuit court *takes* away a party's right of jury trial, however, the court's action must be explained and defended on other grounds.

¶ 107. For instance, this court has determined that a circuit court may enter summary judgment against a party, notwithstanding the party's persistent demand for a jury trial, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Wis. Stat. § 802.08(2); *see Eden v. La Crosse Lutheran Hosp.*, 53 Wis. 2d 186, 192, 191 N.W.2d 715 (1971).

¶ 108. A summary judgment that deprives a party of a jury trial is clearly not grounded in principles of waiver or forfeiture. Summary judgment is grounded on the unrelated principle that a jury is unnecessary—in certain cases—if there are no genuine issues of material fact and only *legal* issues will decide the outcome. In these circumstances, this court's rules of civil procedure authorize circuit judges to deny a party the right of jury trial.[1]

¶ 109. The majority's holding in the present case provides additional authority for circuit judges to take

---

[1] My reservations about the use of summary judgment to deprive a party of trial by jury may be found in: *Trinity Evangelical Lutheran Church and School-Freistadt v. Tower Ins. Co.*, 2003 WI 46, ¶¶ 71–86, 261 Wis. 2d 333, 661 N.W.2d 789 (Prosser, J., dissenting); *Steven V. v. Kelley H.*, 2004 WI 47, ¶¶ 63–100, 271 Wis. 2d 1, 678 N.W.2d 856 (Prosser, J., dissent-

677

away a party's right of jury trial. The majority relies on Wis. Stat. § 804.12(2)(a)3., which permits circuit courts to render judgment by default as a discovery sanction against a disobedient party. Majority op., ¶¶ 5, 81. This authority must be grounded in some principle other than waiver or forfeiture or the absence of disputed facts, for these principles are inapplicable. A circuit court's decision to impose a sanction that deprives a party of a constitutional right ought to require standards that are susceptible to meaningful review. The proposition that a party deprived of a constitutional right by sanction has intentionally relinquished that right is intellectually bankrupt because it eliminates the need for standards governing the judicially imposed deprivation. If a circuit court were to use Wis. Stat. § 804.12(2)(a) to impose significant costs on a defendant (for instance, all the plaintiff's attorney fees) instead of rendering a judgment by default, I hope this court would not try to explain the sanction in terms of "waiver."

¶ 110. When this court endorses a rule permitting judges to take away a party's constitutional right of jury trial, it must enunciate a clear and compelling rationale for that rule, plus standards for its application, so that the rule is not easily employed or terribly abused. This the majority opinion fails to do.

¶ 111. The majority opinion obfuscates Wis. Stat. § 805.01(3), the jury trial waiver statute. The reason for this obfuscation is obvious. Any traditional view of either waiver or forfeiture is inconsistent with the facts of this case. Section 805.01(3) does not provide for

ing); and *Walworth County DHSS v. Andrea L.O.,* 2008 WI 46, ¶¶ 59–68, 309 Wis. 2d 161, 749 N.W.2d 168 (Prosser, J., concurring).

waiver here because WMAS has *not* (1) failed to timely demand a jury trial; or (2) stipulated to trial without a jury.

## II. THE MAJORITY OPINION

¶ 112. Because the future of an important constitutional right is at stake, the majority opinion must be carefully scrutinized. The majority asserts that WMAS "waived its right of trial by jury in the manner set forth in Wis. Stat. §§ (Rule) 804.12(2) and 806.02." Majority op., ¶¶ 5, 81.

¶ 113. The majority explains that a party may waive a trial by jury on the issue of damages "in the manner prescribed by law." Majority op., ¶ 17. Thus, the question, in the majority's view, is whether the defendant waived its right of trial by jury in the manner prescribed by law, that is, "whether by failing to comply with the circuit court's discovery orders and by incurring a judgment by default as a sanction, the defendant has waived its state constitutional right of trial by jury in the manner prescribed by law." *Id.*, ¶ 30.

¶ 114. There is no dispute that Wis. Stat. § 805.03 reads in part:

> For failure of any . . . party to comply with the statutes governing procedure in civil actions or to obey any order of court, the court . . . may make such orders in regard to the failure as are just, including but not limited to orders authorized under s. 804.12(2)(a).

Wisconsin Stat. § 804.12(2)(a) reads in part:

> (2) Failure to comply with order. (a) If a party . . . fails to obey an order to provide or permit discovery . . . the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

679

. . . .

> 3. An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party.

¶ 115. The majority cites cases in which circuit courts have rendered a judgment by default against a disobedient party as a discovery sanction under Wis. Stat. § 804.12(2)(a). Majority op., ¶ 41 n.31; *see Midwest Developers v. Goma Corp.,* 121 Wis. 2d 632, 634, 642–43, 649, 360 N.W.2d 554 (Ct. App. 1984); *Kerans v. Manion Outdoors Co., Inc.,* 167 Wis. 2d 122, 130, 482 N.W.2d 110 (Ct. App. 1992); *Smith v. Golde,* 224 Wis. 2d 518, 525, 528, 592 N.W.2d 287 (Ct. App. 1999); *see also Hudson Diesel, Inc. v. Kenall,* 194 Wis. 2d 531, 535 N.W.2d 65 (Ct. App. 1995).

¶ 116. In several of these cases, the court of appeals moved immediately, without analysis, to apply Wis. Stat. § 806.02—the default judgment statute—as though it were axiomatic that "judgment by default" under Wis. Stat. § 804.12(2)(a)3. is the same as "default judgment" under Wis. Stat. § 806.02. The majority eagerly repeats this procedure. The majority simply states: "Wisconsin Stat. § (Rule) 806.02 governs default judgments." Majority op., ¶ 32.

¶ 117. The majority ultimately concludes: "[T]he clear implication of the rule and the case law applying the rule is that by engaging in conduct that results in a default judgment *the defendant has waived its right of trial by jury in the manner prescribed by Wis. Stat. § (Rule) 806.02.*" Majority op., ¶ 39 (emphasis added).

¶ 118. There are several problems with the majority's analysis.

680

## A

¶ 119. The first problem with the majority's analysis is that it fails to acknowledge that the seminal case applying Wis. Stat. § 804.12(2)(a) to effect judgment by default does not utilize the doctrine of waiver. The *Midwest Developers* case relies on a completely different principle. It looked to *Hauer v. Christon,* 43 Wis. 2d 147, 168 N.W.2d 81 (1969), which explained that a trial court's inherent power to strike a defendant's pleading is grounded "upon the necessity of the court to maintain the orderly administration of justice and the dispatch of its business." *Midwest Developers,* 121 Wis. 2d at 643 (quoting *Hauer,* 43 Wis. 2d at 150–51).

¶ 120. The *Midwest Developers* court went on to explain that the circuit court's decision to render judgment by default was "discretionary" and that a court abuses its discretion if it misapplies or misinterprets the law. *Midwest Developers,* 121 Wis. 2d at 650.

¶ 121. In the *Kerans* case, the court stated:

> The decision is discretionary with the trial court. We review for abuse of that discretion. A court properly exercises its discretion if it examines relevant facts, applies a proper standard of law and, using a demonstrated rational process, reaches a conclusion that a reasonable judge could reach.

*Kerans,* 167 Wis. 2d at 130 (citations omitted).

¶ 122. In *Smith v. Golde* the court restated the standard of review: "We review a trial court's decision to enter a default judgment under the erroneous exercise of discretion standard." 224 Wis. 2d at 525 (citation omitted). Then, it reasoned that to enter a judgment by default as a sanction, "the trial court must determine that the "noncomplying party's conduct is egregious or

681

in bad faith and without a clear and justifiable excuse.' " *Smith*, 224 Wis. 2d at 526 (quoting *Hudson Diesel*, 194 Wis. 2d at 542).

¶ 123. These statements about judicial discretion to maintain the orderly administration of justice embody a starkly different rationale from the majority's theory of defendant "waiver." A court's *discretionary* decision to deny the right of jury trial as a sanction is substantially different from a defendant's intentional relinquishment of that right or failure to assert that right. The first situation focuses on decision-making *by the court* while the second situation focuses on decision-making *by the defendant*.

¶ 124. The majority's theory of waiver departs from black letter Wisconsin law. For instance, in *Milas v. Labor Association of Wisconsin, Inc.*, 214 Wis. 2d 1, 571 N.W.2d 656 (1997), the court stated:

> This court has defined waiver as the "voluntary and intentional relinquishment of a known right" and has stated that "intent to relinquish [the right] is an essential element of waiver." *Von Uhl* [*v. Trempealeau County Mut. Ins. Co.*,] 33 Wis. 2d [32,] 37, 146 N.W.2d 516 [1966]. *The waiver doctrine focuses on the intent of the party against whom waiver is asserted.* It is not necessary, however, to prove that the party had an actual intent to waive. *See Attoe v. State Farm Mut. Auto. Ins. Co.*, 36 Wis. 2d 539, 545, 153 N.W.2d 575 (1967). "[T]he intent to waive may be inferred as a matter of law from the conduct of the parties." *Nelson v. Caddo-Texas Oil Lands Co.*, 176 Wis. 327, 329, 186 N.W. 155 (1922).

*Milas*, 214 Wis. 2d at 9–10 (emphasis added) (footnote omitted) (brackets in original).

¶ 125. The *Milas* court's definition and discussion are consistent with this court's prior explanations of the

682

doctrine of waiver.[2] The *Milas* court's definition is also consistent with the common understanding of what the term "waiver" means, based on definitions found in legal dictionaries.[3]

¶ 126. In *Chevron Chemical Co. v. Deloitte & Touche,* 176 Wis. 2d 935, 501 N.W.2d 15 (1993) (*Chevron I*), the circuit court entered judgment for the plaintiff,

---

[2] *See, e.g., Gonzalez v. City of Franklin,* 137 Wis. 2d 109, 128–129, 403 N.W.2d 747 (1987) (defining waiver as a "voluntary and intentional relinquishment of a known right" and noting that "[i]ntent to waive is regarded as an essential element of waiver" (citations omitted)); *Bank of Sun Prairie v. Opstein,* 86 Wis. 2d 669, 681, 273 N.W.2d 279 (1979) ("Waiver is defined as a voluntary and intentional relinquishment of a known right. Intent to waive is an essential element of waiver." (citations omitted)); *Employers Ins. of Wausau v. Sheedy,* 42 Wis. 2d 161, 166, 166 N.W.2d 220 (1969) ("A waiver is the intentional relinquishment of a known right." (citation omitted)); *Davies v. J.D. Wilson Co.,* 1 Wis. 2d 443, 466, 85 N.W.2d 459 (1957) ("Waiver is defined as voluntary and intentional relinquishment of a known right."); *Swedish Am. Nat'l Bank of Minneapolis v. Koebernick,* 136 Wis. 473, 479, 117 N.W. 1020 (1908) ("A waiver is the intentional relinquishment of a known right." (citation omitted)); *Monroe Water Works Co. v. City of Monroe,* 110 Wis. 11, 22, 85 N.W. 685 (1901) ("A waiver is the intentional relinquishment of a known right." (citation omitted)).

[3] *Black's Law Dictionary* defines "waiver" as "[t]he voluntary relinquishment or abandonment—express or implied—of a legal right or advantage." *Black's Law Dictionary* 1574 (7th ed. 1999).

Another legal dictionary defines "waiver" as "[t]he intentional relinquishment of a known right, claim, or privilege." *Ballentine's Law Dictionary* 1356 (3d ed. 1969) (citing *Phillips v. Lagaly,* 214 F.2d 527 (10th Cir. 1954); *Smith v. Smith,* 51 N.W.2d 276 (Minn. 1952)). Yet another legal dictionary defines "waiver" as "[t]he intentional relinquishment of a known right." 3 *Bouvier's Law Dictionary and Concise Encyclopedia* 3417 (8th ed. 1914) (citing *Lehigh Valley R. Co. v. Providence Wash. Ins. Co.,* 172 Fed. 364 (2nd Cir. 1909)).

notwithstanding a jury verdict for the defendant. *Id.* at 944–45. The court did so as a *sanction* for attorney misconduct. *Id.* at 944. The court explained:

> Sanctions for attorney misconduct both penalize the offender and deter future misconduct. *National Hockey League v. Met[ropolitan] Hockey Club[, Inc.]*, 427 U.S. 639, 643 (1976); *Johnson [v. Allis Chalmers Corp.]*, 162 Wis. 2d [261,] 282–83[, 470 N.W.2d 859 (1991)]. The authority to impose sanctions is essential if circuit courts are to enforce their orders and ensure prompt disposition of lawsuits.

*Chevron I,* 176 Wis. 2d at 946.

¶ 127. Although the *Chevron I* case involved a sanction imposed after a jury trial, not a sanction for discovery violations, the court did not try to rationalize its sanction as some sort of "waiver" by the defendant.

¶ 128. Here the majority adopts a waiver theory at odds with precedent so that judicial deprivation of the constitutional right of jury trial appears to mesh with the waiver language of the state constitution. Wis. Const. art. I, § 5. This theory neatly avoids the constitutional question, shifts the focus from the court's decision-making to the defendant's decision-making, and significantly alters review of circuit court action. It is not correct.

B

¶ 129. The second problem with the majority's analysis is that there is no formal or logical linkage between the phrase in Wis. Stat. § 804.12(2)(a)3., authorizing "judgment by default" against a disobedient party, and Wis. Stat. § 806.02, the default judgment statute. In *Chevron Chemical Co. v. Deloitte & Touche,* 207 Wis. 2d 43, 557 N.W.2d 775 (1997) (*Chevron II*), this

court recognized that default as a sanction is "not a typical default judgment case." *Id.* at 48. The *Chevron II* court noted that "issues of fact and law were joined and the defendant appeared at trial." *Id.* Thus, the *Chevron II* court determined that the default sanction was "*not governed by § 806.02.*" *Id.* (emphasis added).

¶ 130. The present case, involving another judicial sanction, also is not a typical default judgment case. The defendant did not forgo the right of trial by jury by failing to answer the complaint or failing to appear in court. The circuit court took away the right and entered judgment as a sanction. It would appear self-evident that the entry of judgment by default *on these facts* should be treated and reviewed differently from a default judgment entered on the basis of a defendant's failure to answer the complaint.

C

¶ 131. The third problem with the majority's analysis comes from a close examination of Wis. Stat. § 806.02. Careful examination reveals why the statute does not govern judgments by default in sanction cases.

1

¶ 132. Subsection (1) reads: "A default judgment may be rendered as provided [in sub. (1)] if no issue of law or fact has been joined and if the time for joining issue has expired." Wis. Stat. § 806.02(1). In a sanction case, a sanctioned defendant is very likely to have joined issue by filing an answer to the complaint. The circuit court's decision to strike an answer is materially different from a defendant's failure to file an answer. To utilize subsection (1), the court must disregard the historical fact that the defendant answered the complaint.

¶ 133. Subsection (2) provides: "After filing the complaint and proof of service of the summons on one or more of the defendants *and an affidavit that the defendant is in default for failure to join issue,* the plaintiff may move for judgment according to the demand of the complaint." Wis. Stat. § 806.02(2) (emphasis added). In this case, the plaintiff did not move for judgment with an affidavit averring that WMAS was in default *for failure to join issue.* On April 22, 2005, the plaintiff moved to strike WMAS's pleadings as a discovery sanction. This was not a § 806.02 motion. It was a Wis. Stat. § 804.12(2)(a)3. motion.

¶ 134. Subsection (2) also provides that: "If the amount of money sought was excluded from the demand for judgment, as required under s. 802.02(1m), the court *shall* require the plaintiff to specify the amount of money claimed and provide that information to the court and to the other parties *prior to the court rendering judgment."* Wis. Stat. § 806.02(2) (emphasis added). That did not happen here. On November 4, 2005, the circuit court issued a memorandum and order striking the pleadings and granting default judgment against WMAS pursuant to § 806.02. On November 28, 2005, the court signed a formal order that said in part: "Default judgment is entered against WMAS in favor of Plaintiff." A hearing on damages was not held until February 27–28, 2006, nearly four months later.

¶ 135. Subsection (3), like subsection (2), appears to require proof "*before* entering a judgment against such defendant." Wis. Stat. § 806.02(3) (emphasis added).

¶ 136. In short, the circuit court may have acted correctly in entering judgment by default under Wis. Stat. § 804.12(2)(a)3., but it did not follow the provisions of Wis. Stat. § 806.02. If the majority insists upon the applicability of § 806.02, it cannot conclude that the circuit court correctly followed that statute.[4]

4

¶ 137. Subsection (2) further provides: "If proof of any fact is necessary for the court to give judgment, the court shall *receive* the proof." Wis. Stat. § 806.02(2) (emphasis added). Subsection (5) provides in part: "If proof of any fact is necessary for the court to render judgment, the court shall *receive* the proof." Wis. Stat. § 806.02(5) (emphasis added).

¶ 138. The Judicial Council Committee's Note to Wis. Stat. § 806.02 from 1977 reads in part:

> Sub. (5) has been modified to allow a judge in a default judgment matter to receive rather than mandatorily hear the proof of any fact necessary for a court to render judgment. This change allows a judge *the option of in-chamber consideration of affidavits* presented by attorneys. Under the present language the time of the judge may be taken up in open court hearing proof presented by the attorney orally whereas proof submitted by the attorney in the form of affidavits may be just as competent and trustworthy.

Judicial Council Committee's Note, 1977, § 806.02, Stats. (emphasis added).

---

[4] For discussion of Wis. Stat. § 806.02(2), see *Stein v. Illinois State Assistance Commission*, 194 Wis. 2d 775, 782, 535 N.W.2d 101 (Ct. App. 1995).

¶ 139. The Judicial Council Note from 1981 indicates that the identical change had been made to subsection (2). Judicial Council Note, 1981, § 806.02, Stats.

¶ 140. These proof by affidavit provisions are much easier to justify when a party has, in fact, defaulted, that is, when a party has consciously *given up the right to a trial* either by a jury or by the court. These provisions are very difficult to justify if the right of trial by jury has been taken away as a sanction, because the court's decision to impose a sanction would arguably give the court the right to skip a time-consuming hearing on damages altogether.

¶ 141. Taking points B and C together, there is no linkage between "judgment by default" under Wis. Stat. § 804.12(2)(a)3. and "default judgment" under Wis. Stat. § 806.02. A close examination of § 806.02 makes it clear that this statute does not govern "judgment by default" imposed as a sanction. Consequently, the majority's reliance upon Wisconsin precedent under § 806.02 and federal cases under Federal Rule of Civil Procedure 55 is not on point.[5]

### D

¶ 142. The fourth problem with the majority's analysis is that it overlooks critical precedent circumscribing a court's right to strike pleadings as a sanction.

---

[5] The majority opinion quotes a decision from the Fifth Circuit: "Assuming that [the party] had the right to a jury trial he waived that right when he purposefully *chose not to answer the suit* and timely request such a trial." Majority op., ¶ 48 (quoting *Dierschke v. O'Cheskey*, 975 F.2d 181, 185 (5th Cir. 1992)) (emphasis added).

This authority is not applicable; WMAS answered Rao's amended complaint on June 2, 2005.

This court has held that the trial court has "an inherent power to dismiss a complaint and also to strike an answer and grant a default judgment, *but . . . the exercise of the power is limited by the requirement of due process* of the fourteenth amendment of the United States Constitution." *Hauer,* 43 Wis. 2d at 154 (emphasis added). Denial of a party's demand for trial by jury at the same time judgment by default is granted underscores the need for sound discretion that satisfies the requirements of due process.

¶ 143. In *Gipson Lumber Co. v. Schickling,* 56 Wis. 2d 164, 201 N.W.2d 500 (1972), the court applied this due process principle to a discovery case:

> While sec. 885.11(5), Stats.,[6] does not specifically refer to a refusal to produce documents under subpoena duces tecum, which seems to be the main ground upon which the trial court struck the answer, ... . we consider the section to be broad enough to embrace the failure to obey such a subpoena used with a discovery examination. . . .

> The constitutionality of statutes similar to sec. 885.11(5), Stats., has been considered and upheld providing the court exercising the power remains within the bounds of due process of law. Three major cases have laid down guidelines.[7] These cases were re-

---

[6] Wisconsin Stat. § 885.11(5) currently reads: "Striking out pleading. If any party to an action or proceeding shall unlawfully refuse or neglect to appear or testify or depose therein, either within or without the state, the court may, also, strike out the party's pleading, and give judgment against the party as upon default or failure of proof." The current subsection is virtually identical to the subsection when *Gipson Lumber Co. v. Schickling,* 56 Wis. 2d 164, 201 N.W.2d 500 (1972), was decided.

[7] The court cited *Societe Internationale Pour Participations Industrielles Et Commerciales, S.A. v. Rogers,* 357 U.S. 197

viewed in *Hauer v. Christon*, 43 Wis. 2d 147, 168 N.W.2d 81 [1969], and the teaching is that *a judge may strike an answer for noncompliance within the bounds of due process when the evidence withheld relates to an essential element of the defense so as to warrant a presumption of lack of merit* and the disobedience is not the result of an inability on the part of the defendant to perform.

*Id.* at 168–69 (emphasis added) (footnote omitted).

¶ 144. Both *Hauer* and *Gipson* predate this court's adoption of the Wisconsin Rules of Civil Procedure. However, the procedure rules include Wis. Stat. § 805.01(1), which reads: "Right preserved. The right of trial by jury as declared in Article I, Section 5, of the constitution or as given by a statute and the right of trial by the court *shall be preserved* to the parties *inviolate*." Wis. Stat. § 805.01(1) (emphasis added). This language is stronger than the language in Article I, Section 5. Moreover, the rules of civil procedure were adopted under Wis. Stat. § 751.12, which admonishes the court that its rules "shall not abridge . . . or modify the substantive rights of any litigant." Thus, the rules of civil procedure cannot be held to diminish a party's rights to due process or trial by jury from what they were before the adoption of the civil procedure rules.

### III. WISCONSIN PRECEDENT

¶ 145. Before attempting to articulate standards for circuit courts that impose sanctions that deprive a party of trial by jury, it may be useful to examine additional Wisconsin precedent.

¶ 146. The relevant portions of Article I, Section 5 have been part of the Wisconsin Constitution since

(1958), *Hammond Packing Co. v. Arkansas,* 212 U.S. 322 (1909), and *Hovey v. Elliott,* 167 U.S. 409 (1897).

1848. Our constitution has always provided that, "The right of trial by jury shall remain inviolate, and shall extend to all cases at law without regard to the amount in controversy; but a jury trial may be waived by the parties in all cases in the manner prescribed by law." Wis. Const. art. I, § 5. From the beginning, judges and legislators have wrestled with the question of how to waive the right of jury trial.

¶ 147. In *Leonard v. Rogan,* 20 Wis. 568 (1866), this court reviewed a dispute over a conveyance of real estate. One question was whether the defendant, Mrs. Rogan, was entitled to a trial by jury. *Id.* at 568–71. The court stated that "[i]n an action at law, the defendant is entitled to a trial by jury . . . unless she has waived it." *Id.* at 571. The court concluded that Mrs. Rogan had waived her right of jury trial because the record revealed that the action proceeded to trial before the judge alone, without objection. *Id.* "[I]n other words . . . the parties *consented* to that mode of trial." *Id.* (emphasis added). "If the defendant had demanded a trial by jury, as she might have done, . . . the question would have been very different." *Id.*

¶ 148. In another case, *Home Insurance Co. v. Security Insurance Co.,* 23 Wis. 171 (1868), the court determined that it was too late for the defendant to object to a non-jury trial when it voluntarily waived the right to trial before a court and jury by stipulating in writing to trial before a referee. *Id.* at 175. The court noted that while the "legislature has not attempted to *compel* the parties to submit to a trial by referees in actions of this nature," *id.* at 174, the statute at issue provided that "all or any of the issues in this action, whether of fact or of law, or both, *may* be referred, *upon the written consent of the parties.*" *Id.* at 174. The court explained that the parties "may waive their right under

691

the constitution to have the [dispute] heard and determined by the courts and juries of the country." *Id.* The court held that it was not "incompetent" for the legislature to pass such laws, because the "validity of the transaction" depended "entirely on the will of the parties." *Id.*

¶ 149. In *Wooster v. Weyh*, 194 Wis. 85, 216 N.W. 134 (1927), the defendant claimed he was deprived of his right to trial by jury. *Id.* at 89. The court's response: "The right he had to such trial by jury was one that may be waived. It was clearly waived in this case by appellant proceeding to trial without in any manner calling the matter to the attention of the court or suggesting that a trial by jury on this issue was desired or demanded." *Id.* at 91–92 (citations omitted).

¶ 150. These cases supplement Wisconsin statutes of long standing that have explained how to waive a jury trial. For instance, Section 2862 of the Revised Statutes of 1878 stated:

> Trial by jury may be waived by the several parties to an issue of fact in actions on contract, and with the assent of the court in other actions, *in the following manner:*
>
> 1. By failing to appear at the trial.
>
> 2. By written consent, in person or by attorney, filed with the clerk.
>
> 3. By oral consent in open court, entered in the minutes.

Wis. Stat. ch. 128, § 2862 (1878) (emphasis added). This text remained intact until January 1, 1936.

¶ 151. In 1935 the court revised then-existing Wis. Stat. § 270.32 (1935) to read: "Jury trial, how waived. Trial by jury may be waived by the several

parties to an issue of fact by failing to appear at the trial; or by written consent filed with the clerk; or by consent in open court, entered in the minutes." S. Ct. Order, 217 Wis. v, ix (eff. Jan. 1, 1936). Apart from short-lived revisions in the mid-1940s, *see Petition of Doar,* 248 Wis. 113, 21 N.W.2d 1 (1945), this language stated the law until the court revised the rules of civil procedure in 1975, effective in 1976.

¶ 152. These statutes and cases demonstrate that waiver of the constitutional right of jury trial in civil cases has historically tracked traditional principles of waiver or forfeiture: affirmative or consensual action by one or more of the parties to surrender the right, or obvious failure by any party to assert the right. The steadfast maintenance of true waiver and forfeiture principles underlies the importance of the right being waived.

¶ 153. Wisconsin precedent honors the right of jury trial. In *Schmidt v. Riess,* 186 Wis. 574, 203 N.W. 362 (1925), this court observed:

> Jurors are obtained from the various walks of life, with various degrees of knowledge and experience and with various interests, and, it must be assumed and admitted, with certain prejudices. . . . Unconscious prejudices exist with some in favor of the plaintiff, and with others in favor of the defendant. But after conceding all of these various elements that enter into the make-up of the personnel of the jurors and of the jury, it is largely designed that the average judgment of twelve men and women chosen from the citizenship of the community in which the parties reside will meet the requirements of justice, and that a verdict of the jury will be a true and just one.

*Id.* at 579–80.

¶ 154. *Schmidt* was a case in which the amount of damages was at issue. The court noted that "[t]he assessment of damages in a personal injury case presents a matter . . . which is peculiarly within the field of a jury to determine." *Id.* at 579. In *DeKeyser v. Milwaukee Automobile Insurance Co.,* 236 Wis. 419, 431, 295 N.W. 755 (1941), this court made a stronger statement that "assessment of damages is solely a jury function." Again in *Schultz v. Miller,* 259 Wis. 316, 327, 48 N.W.2d 477 (1951), the court said "[t]he award of damages is within the province of the jury." Many additional cases could be cited.

¶ 155. In sum, "[t]he parties to an action are entitled to a jury trial on all issues of fact, including that of damages." *Jennings v. Safeguard Ins. Co.,* 13 Wis. 2d 427, 431, 109 N.W.2d 90 (1961) (citing Wis. Const., art. I, § 5).

## IV. STANDARDS

¶ 156. The challenge in this case is to reconcile the judicial holdings that eloquently articulate the importance of trial by jury for deciding issues of fact, including the issue of damages, with the clear precedent that courts have authority to strike out pleadings or parts thereof and render a judgment by default when a defendant fails to comply with a court order.

¶ 157. In *Johnson v. Allis Chalmers Corp.,* 162 Wis. 2d 261, 470 N.W.2d 859 (1991), this court discussed judicial authority, both statutory and inherent, to sanction parties "for failure to prosecute, failure to comply with procedural statutes or rules, and for failure to obey court orders." *Id.* at 273–74. Appropriate sanctions under Wis. Stat. § 804.12, the court said, include orders that designated facts be taken as established as well as

orders that refuse the delinquent party the right to support or oppose designated claims or defenses, or that strike out pleadings or parts of pleadings, or that render judgment by default. *Id.* at 274.

¶ 158. The court, speaking through Justice William Bablitch, made these telling observations:

> The latitude circuit courts in Wisconsin have to dismiss actions as a sanction is demonstrated by sec. 805.03, Stats., which permits dismissal whenever a party fails "to obey any order of the court." Although this language could be viewed as permitting dismissal for noncompliance with even trivial procedural orders, closer examination of the statute reveals that the court may only impose such orders "as are just." Furthermore, the Judicial Council Committee's Note . . . emphasizes that "[b]ecause of the harshness of the sanction, a dismissal under this section should be considered appropriate only in cases of egregious conduct by a claimant." Our case law establishes that dismissal is improper, i.e. not "just," unless bad faith or egregious conduct can be shown on the part of the noncomplying party.

*Johnson,* 162 Wis. 2d at 274–75 (citations omitted) (brackets in original). The court added that dismissal is a sanction that should rarely be granted and is appropriate only in cases of egregious conduct. *Id.* at 275 (citing *Trispel v. Haefer,* 89 Wis. 2d 725, 732, 279 N.W.2d 242 (1979)).

¶ 159. Striking a *defendant's* pleadings is roughly equivalent to dismissing a *plaintiff's* case and should be subject to similar standards. The following standards may be useful.

¶ 160. First, to strike a party's pleadings as a sanction, a circuit court must show that the noncomplying party's conduct was "egregious or in bad faith

and without a clear and justifiable excuse." *Smith,* 224 Wis. 2d at 526 (internal quotation marks and citation omitted); *see also Schultz v. Sykes,* 2001 WI App 255, ¶ 9, 248 Wis. 2d 746, 638 N.W.2d 604 (citing cases).

¶ 161. Second, the decision to enter default judgment as a sanction "ought to be the last resort." *Adolph Coors Co. v. Movement Against Racism and the Klan,* 777 F.2d 1538, 1542 (11th Cir. 1985). Some federal courts consider it an "abuse of discretion" to impose judgment by default "if less draconian but equally effective sanctions" are available. *Id.* at 1543 (citing cases).

¶ 162. Third, the entry of judgment by default as a sanction must comply with due process. This consideration was discussed in *Dubman v. North Shore Bank,* 75 Wis. 2d 597, 249 N.W.2d 797 (1977):

> This court has held that there is an inherent power to strike pleadings in a proper case. . . .
>
> Defendant claims that the order . . . imposes sanctions for contempt of court. If so, it is appealable. However, both *Hauer v. Christon* and *Gipson Lumber Co. v. Schickling* . . . hold that the sanction of striking a pleading may not be exercised as a contempt penalty. *The power can be exercised when evidence is withheld which relates to an essential element of the defense so as to warrant a presumption of fact that the defense has no merit. If imposed solely for failure to obey court orders, without evidence warranting a finding of no merit or bad faith, the sanction of striking a pleading . . . denies due process of law.*

*Dubman,* 75 Wis. 2d at 600–01 (emphasis added) (citations omitted).[8]

---

[8] "[T]here are constitutional limitations upon the power of courts, even in aid of their own valid processes, to dismiss an

¶ 163. Fourth, a circuit court must have discretion to narrow the focus of a damages hearing if the narrowing is "just" to the plaintiff. Striking a defendant's answer will *normally* settle the issue of the defendant's liability. In this case, however, when the circuit court struck the defendant's answer it made the defendant liable for: (1) vicarious liability for WMAS's employee's unlawful acts of conversion; (2) intentional misrepresentation; (3) strict responsibility misrepresentation; (4) negligent misrepresentation; (5) breach of fiduciary duty; (6) negligence; (7) breach of the implied duty of good faith in performance of a contract; and (8) breach of contract. *See* majority op., ¶ 9. Imposing liability on eight different causes of action complicated the task of determining damages. The claims appear to be inconsistent. A court should have the ability to narrow the issues for a damages hearing.

¶ 164. Fifth, striking a defendant's answer does not settle the amount of compensatory damages.[9] The amount of compensatory damages remains an open question that requires proof of additional facts. The burden of proving the amount of damages remains with the party entitled to judgment.

¶ 165. In *Apex Electronics Corp. v. Gee*, 217 Wis. 2d 378, 380, 577 N.W.2d 23 (1998), this court stated that a circuit court entering a default judgment on a *punitive* damages claim must make inquiry beyond the complaint to determine the merits of the punitive damages claim and the amount of punitive damages, if

---

action without affording a party the opportunity for a hearing on the merits of his cause." *Societe Internationale*, 357 U.S. at 209.

[9] *See U.S. for the Use of M-CO Constr., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987) (interpreting Federal Rule of Civil Procedure 37(b)).

any, to be awarded. The court's analysis is equally applicable to a plaintiff who seeks unliquidated compensatory damages. *Id.* at 387–88; *see also Gaertner v. 880 Corp.,* 131 Wis. 2d 492, 505–06, 389 N.W.2d 59 (Ct. App. 1986).

¶ 166. Because judgment by default pursuant to Wis. Stat. § 804.12(2)(a)3. is not governed by Wis. Stat. § 806.02, *Chevron II,* 207 Wis. 2d at 48, this court cannot rely on pronouncements in § 806.02 cases that the court has the prerogative either to hold a hearing or inquiry on damages *or* to receive proof by affidavit. This court must decide how to determine damages when judgment by default is the result of judicial sanction, rather than waiver. It should not automatically conclude that a circuit court may disregard a defendant's demand for a jury trial to decide the issue of damages when that factual issue remains in dispute. Pointing to § 806.02 for judicial authority to deny trial by jury locks the court into judicial discretion to use only affidavits in determining damages.

¶ 167. The case law under Federal Rule of Civil Procedure 37(b) holds that a default may not be claimed as to damages "without a hearing unless the amount claimed is a liquidated sum or one capable of mathematical calculation." *United Artists Corp. v. Freeman,* 605 F.2d 854, 857 (5th Cir. 1979) (citing *Flaks v. Koegel,* 504 F.2d 702, 707 (2d Cir. 1974); *Eisler v. Stritzler,* 535 F.2d 148, 153–54 (1st Cir. 1976)). If there is no dispute as to the amount of damages either because of the amount lawfully pled in the complaint[10] or because the amount is easily and objectively ascertainable, there

---

[10] Generally, with respect to a tort claim seeking recovery of money, the demand for judgment may not specify the amount of

should be no need for the defendant to continue to demand a jury and no need for a court to honor that demand.

¶ 168. However, if an evidentiary hearing is required to determine the amount of damages, a defendant's demand for a jury trial must be considered, just as a plaintiff's demand would have to be considered.

¶ 169. There are numerous reasons why the right of jury trial should be maintained in this situation:

a. The statutes nowhere authorize a circuit court to deny trial by jury per se. If they did, courts could sanction parties by denying the right of jury trial as a separate sanction, even when they did not strike out pleadings or enter judgment by default.

b. When a circuit court strikes a defendant's pleadings under Wis. Stat. § 804.12(2)(a)3., it imposes a drastic sanction. When the court thereafter denies a jury trial to determine the amount of damages, it is imposing an additional sanction on the defendant that requires additional justification if it is to comport with due process.[11] The second sanction does not follow automatically from the first sanction.

c. The circuit court may not deny a jury trial *to the plaintiff* on the issue of damages if the plaintiff wants a jury. A plaintiff does not automatically relinquish the right of jury trial by filing a motion to strike the defendant's pleadings as a sanction for discovery viola-

money the pleader seeks. Wis. Stat. § 802.02(1m)(a). However, this general rule does not control the complaint in all other cases.

[11] The circuit court's explanation of its additional sanction here was: "The motion for a jury trial is denied. I don't think that a person in default is entitled to a jury trial on an issue of damages, although they are permitted to participate in that hearing on damages."

tions. *See Morrison v. Rankin,* 2007 WI App 186, ¶ 14, 305 Wis. 2d 240, 738 N.W.2d 588. There is something quite unfair, however, in honoring the request for a jury trial for one side but not the other.

d. The circuit court could not exclude the defendant from a jury trial if other defendants still had the right to claim a jury trial. *See* Wis. Stat. § 805.01(3). A sanctioned defendant may not be able to escape liability, but a sanctioned defendant ought to be able to establish the extent of its liability in relation to other defendants.

e. If punitive damages come into play, a defendant ought to be able to ask a jury to consider compensatory and punitive damage claims at the same time. *See Trinity Evangelical Lutheran Church and School- Freistadt v. Tower Ins. Co.,* 2003 WI 46, 261 Wis. 2d 333, 661 N.W.2d 789.

¶ 170. The above conclusions are in accord with the law of Michigan and Florida. These states preserve a defendant's right of trial by jury on the issue of damages when a sanction of default is entered against that defendant.

¶ 171. In *Wood v. Detroit Automobile Inter- Insurance Exchange,* 321 N.W.2d 653 (Mich. 1982), the trial court entered default judgment against the defendant for failure to timely respond to interrogatories following two court orders requiring a response. *Id.* at 655–56. But on appeal, the Michigan Supreme Court rejected the notion that a defendant's default "cancels" a prior jury trial demand or constitutes the functional equivalent of waiver. *Id.* at 658–59.

¶ 172. The *Wood* court determined that Rule 520 of the Michigan General Court Rules of 1963 controlled entry of default judgment. *Id.* at 659. Specifically, the *Wood* court cited Rule 520, which preserved "a right of trial by jury to the parties when and as required by the

constitution" in cases where (as here) the trial court must initiate further proceedings to determine damages on default. *Id.* at 659 n.12, 660 (quoting Rule 520.2(2) of the Michigan General Court Rules of 1963). The *Wood* court noted that the Michigan Constitution stated that "[t]he right of trial by jury shall remain, but shall be waived in all civil cases unless demanded by one of the parties in the manner prescribed by law." *Wood,* 321 N.W.2d at 660 (quoting Mich. Const., art. 1, § 14 (1963)).[12] Since the defendant in *Wood* had not waived its right to jury trial, the court concluded that "the trial court . . . was obliged to accord defendant its properly preserved right to jury trial." *Wood,* 321 N.W.2d at 660 (footnote omitted).

¶ 173. The Michigan Supreme Court reaffirmed its *Wood* holding in *Zaiter v. Riverfront Complex, Ltd.,* 620 N.W.2d 646, 651–53 (Mich. 2001). *Zaiter* involved a default entered against a defendant for failure to participate in discovery. *Id.* at 647. The *Zaiter* defendant requested a jury trial by relying on the plaintiff's demand for jury trial. *Id.*

¶ 174. The *Zaiter* court construed Michigan Court Rule 2.603(B)(3)(b) (1985), which replaced Michigan General Court Rule 520. *Id.* at 651–52. The Michigan court noted that the new rule included the phrase "to the extent required by the constitution," instead of "when and as required by the constitution," and determined that "[n]o substantive change was intended by that rephrasing." *Id.* at 652, 652 n.11. Thus, the *Zaiter* court held that the defendant had the right to a jury trial on damages when default was entered against it as a sanction. *Id.* at 652.

---

[12] This language is similar to that of Wis. Const. art. I, § 5.

701

¶ 175. *Wood* and *Zaiter* are not distinguishable from WMAS's case in any meaningful way. All three cases involve default entered by the trial court as a sanction against a defendant who requested a jury trial. In each case, after judgment was entered the trial court held a hearing to determine the amount of damages. In each case, the civil procedure rules and constitutional provisions at issue provided that the right to a jury trial was preserved unless waived. Thus, default, even as a sanction, does not constitute a waiver of the jury trial right. *See Zaiter,* 620 N.W.2d at 652 (citing *Wood,* 321 N.W.2d at 653).

¶ 176. Since the defendants in *Wood* and *Zaiter* invoked their right to a jury trial, and did not waive the right, they were entitled to a jury trial on the issue of damages. The same result should follow in the instant case. The majority's extraordinary response is that the court has given judges the right, in their discretion, to consider jury rights "waived." *See* majority op., ¶ 54.

¶ 177. The Florida Supreme Court addressed the issue of waiver of the right to a jury trial in the default judgment context in *Curbelo v. Ullman,* 571 So. 2d 443 (Fla. 1990). In *Curbelo,* a default judgment was entered against defendant Curbelo for failure to answer. *Id.* at 444. The trial court found damages against Curbelo in a non-jury trial, despite the *plaintiff's* earlier request for a jury. *Id.*

¶ 178. The Florida Supreme Court determined that "[w]hen a jury trial has been requested by the plaintiff, the defendant is still entitled to a jury trial on the issue of damages even though a default has been entered against the defendant for failure to answer or otherwise plead." *Id.* (citation omitted). The court cited a Florida rule of civil procedure for the proposition that "a demand for trial by jury may not be withdrawn

702

'without the consent of the parties.' " *Id.* (quoting Fla. R. Civ. P. 1.430(d)).[13] The Florida Supreme Court held that "consent to waiver must be manifested by affirmative action such as a specific waiver in writing or by announcement in open court." *Id.* (internal quotation marks and citation omitted). Since there was no "affirmative manifestation," the *Curbelo* court found that Curbelo did not waive his right to a jury trial. *Id.*

¶ 179. Florida courts applying the Florida Rules of Civil Procedure have consistently adopted the logical position that waiver of the right to a jury trial requires some affirmative action or consent by the parties. *See, e.g., Barth v. Fla. State Constructors Serv., Inc.,* 327 So. 2d 13, 15 (Fla. 1976); *Baron Auctioneer, Inc. v. Ball,* 674 So. 2d 212, 213–14 (Fla. Dist. Ct. App. 1996); *Jayre, Inc. v. Wachovia Bank & Trust Co., N.A.,* 420 So. 2d 937, 938 (Fla. Dist. Ct. App. 1982). In Florida the right to trial by jury is preserved absent waiver, even when the opposing party, not the proponent of the right, has made the demand for trial by jury. *Curbelo,* 571 So. 2d at 444.

¶ 180. In sum, these decisions from Michigan and Florida indicate that the right to trial by jury, when properly demanded, is preserved despite the fact that default judgment was entered against one party as a sanction.

¶ 181. In Wisconsin, a "default judgment" entered under Wis. Stat. § 806.02 may be distinguished from a "judgment by default" entered as a sanction under Wis. Stat. § 804.12(2)(a)3., and courts acting under Wis. Stat. § 806.02 have broad discretion on how to proceed.

---

[13] The quoted language from Florida Rule of Civil Procedure 1.430(d) is virtually identical to that found in the Wisconsin Statutes. Wis. Stat. § 805.01(3) ("A demand for trial by jury made as herein provided may not be withdrawn without the consent of the parties.").

703

In a *real* default, a defendant cedes that authority to the circuit court by its failure to assert its right to a trial. To apply the same sort of "waiver" principles to a judge's sanction, however, is to create a fiction that diminishes the valued constitutional right of jury trial.

¶ 182. For the reasons stated, I respectfully dissent.

¶ 183. I am authorized to state that Justice PATIENCE DRAKE ROGGENSACK joins this dissent.